JAMES A. TALBERT *et al.*, on behalf of Themselves and All Other Persons Similarly Situated, Plaintiffs-Appellants, v. HOME SAVINGS OF AMERICA, F.A., Defendant-Appellee.

First District (2nd Division)   No. 1—93—2587

Opinion filed July 19, 1994.—Rehearing denied October 5, 1994.

Larry D. Drury, Ltd., of Chicago, for appellants.

Jenner & Block, of Chicago (John H. Mathias, Jr., Patricia Lee Refo, and Michael S. Elvin, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs, James and Nancy Talbert (the Talberts), appeal from an order dismissing their amended complaint (complaint). The complaint charged defendant, Home Savings of America (Home Savings), with breach of contract and two counts of fraud, claiming that Home Savings wrongly assessed the Talberts $250 in "points" on their home mortgage loan. Presented as issues for review are whether the complaint sufficiently states a cause of action for breach of contract, common law fraud, and statutory fraud, and whether the breach of contract count is barred by affirmative matter.

The following facts are gleaned from the complaint and its exhibits. In July 1991, Home Savings advertised in the media certain mortgage loans with no points or application fees. Specifically, it advertised a "no-points fixed rate loan" with "no appraisal fee," and a "no-points adjustable rate loan" with "no appraisal fee and no application fee." The advertisement also stated: "Check with your local loan office for maximum loan amounts and other terms and limitations."

The next month the Talberts visited Home Savings' office and applied for a loan to refinance their home mortgage. Home Savings approved their application, of which they were notified in a commitment letter (commitment) dated August 29, 1991. The commitment advised that the letter and other written loan documents will "supersede any oral agreements, statements or representations that might have been made by you or [Home Savings]." The commitment also provided that the terms of the loan included an adjustable interest rate and "a loan fee of 0% of the loan amount plus $250."

At closing on September 16, 1991, a settlement statement, executed by the Talberts that same day, called the $250 fee a "LOAN APPLICATION FEE." On November 11, 1991, James Talbert wrote Home Savings a letter protesting the $250 fee, acknowledging that the fee had been explained to him and his wife, but questioning its appropriateness in light of Home Savings' advertisements.

Early in 1992, Home Savings sent the Talberts a statement that indicated that the $250 fee was to be reported to the Internal Revenue Service as points. According to the complaint, had Home Savings disclosed to the Talberts before the closing that the $250 fee actually was points, they "would have protested and/or not closed the loan."

Home Savings moved to dismiss the complaint pursuant to sections 2—615 and 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619(a)(9) (West 1992) (section 2—615 or section 2—619(a)(9))). To that motion, Home Savings appended several

documents that set forth in writing the home mortgage loan agreement between it and the Talberts. These documents, which the Talberts failed to attach to their complaint, portentously augment the complaint's allegations as follows.

When the Talberts initially visited Home Savings' office on August 12, 1991, they executed three documents: an addendum to their loan application, a notice concerning loan options, and their loan application. In the addendum, the Talberts chose to apply for an "ARM IV-C" adjustable rate mortgage loan. The Talberts certified in the addendum that "the terms of [several if not all of Home Savings'] loan programs [had been explained to them] by the loan agent prior to acceptance of the completed application to which this Addendum is attached," and that they had read and understood "the provisions contained on both sides of this Addendum." The loan application also indicated that the Talberts were applying for a "IV-C" mortgage loan.

The notice advised that, under the "ARM IV-C" program, either of two loan options involving different fee structures was available. The Talberts chose the option where they would pay a "loan fee of 0% plus $250" with prepayment penalties, rather than a "loan fee of $1/2\%$ plus $250" with no prepayment penalties. The Talberts acknowledged that the terms of the loan program, "including the charges discussed above," had been described to them.

Home Savings later tendered to the Talberts a document entitled "GOOD FAITH ESTIMATES OF SETTLEMENT CHARGES." It again disclosed that the loan the Talberts had applied for would require them to pay the $250 fee upon closing. This document called the $250 fee a "Loan Origination Fee."

On the closing date, September 16, 1991, the parties executed the "Loan Closing Statement." It described the $250 fee simply as a "Loan Fee" and authorized Home Savings to deduct it from the loan proceeds prior to disbursement of the loan. The closing statement also provided: the borrower "agrees to the correctness hereof and further authorizes and ratifies the deductions and disbursements of the amounts shown above"; and "[b]orrowers' execution of all documents and forms shall be deemed approval of all terms and conditions contained in such documents and forms."

At a hearing on the motion to dismiss, the Talberts' counsel stated that the Talberts had always known they were paying a $250 fee, but did not know this fee was actually points. The circuit court granted the motion to dismiss with prejudice. It ruled: "With regard to breach of contract, they did enter into a written contract. It seems to me that at every stage in the proceedings they were advised of this

$250 fee, and regardless of what it was called, they agreed to it." The Talberts appeal.

## I

●1 Home Savings moved to dismiss the complaint under both sections 2—615 and 2—619(a)(9), using an improper hybrid motion. The circuit court granted the motion to dismiss without drawing a distinction between the two procedures. Reviewing courts have long disapproved of this slipshod practice as it causes unnecessary complication and confusion. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 405-06, 312 N.E.2d 605; *MBL (USA) Corp. v. Diekman* (1985), 137 Ill. App. 3d 238, 241-42, 484 N.E.2d 371.) Home Savings should have first challenged the legal sufficiency of the complaint under section 2—615. Only once it was determined that a legally sufficient cause of action had been stated should the court have entertained a section 2—619(a)(9) motion. Nevertheless, since the interests of judicial economy would be served and the Talberts are not prejudiced thereby, the motion shall be determined here as having been filed in the proper manner. *Smith v. Chemical Personnel Search, Inc.* (1991), 215 Ill. App. 3d 1078, 1081-82, 576 N.E.2d 340.

## II

The Talberts initially contend that their complaint states a cause of action for breach of contract. Home Savings responds that the complaint fails to allege the existence of a contract.

The standard of review on appeal from a section 2—615 motion to dismiss is whether the complaint sufficiently states a cause of action; the merits of the case are not at issue. (*Boender v. Chicago North Clubhouse Association, Inc.* (1992), 240 Ill. App. 3d 622, 627, 608 N.E.2d 207.) Attached exhibits are an integral part of the complaint and must be so considered. (735 ILCS 5/2—606 (West 1992); *Sharps v. Stein* (1980), 90 Ill. App. 3d 435, 438, 413 N.E.2d 75.) A section 2—615 motion admits as true all well-pleaded facts and reasonable inferences that could be drawn from those facts (*Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 473, 564 N.E.2d 1222), but not conclusions of law or conclusions of fact unsupported by allegations of specific facts (*Groenings v. City of St. Charles* (1991), 215 Ill. App. 3d 295, 299, 574 N.E.2d 1316).

To state a cause of action for breach of contract, a plaintiff must allege that a contract exists, plaintiff performed its obligations under the contract, defendant breached the contract, and plaintiff was injured as a result. (*Rajkovich v. Alfred Mossner Co.* (1990), 199 Ill.

App. 3d 655, 660, 557 N.E.2d 496.) To allege the existence of a valid contract, a plaintiff must plead facts indicating there was an offer, an acceptance, and consideration. (*Martin v. Government Employees Insurance Co.* (1990), 206 Ill. App. 3d 1031, 1035, 565 N.E.2d 197.) A general allegation that a contract exists without supporting facts is a legal conclusion which may not be admitted by a motion to dismiss. (*Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 864, 341 N.E.2d 101.) Terms such as "offered," "accepted," and "breached its contract" suggest mere legal conclusions. *Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 707-08, 491 N.E.2d 795.

●2 In the instant case, the Talberts' complaint failed to state a cause of action for breach of contract. As their complaint alleged, Home Savings' advertisement of its loans without certain fees was an invitation for an offer. (See *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 330, 371 N.E.2d 634; *Jones v. Eagle II* (1981), 99 Ill. App. 3d 64, 70, 424 N.E.2d 1253.) The Talberts' complaint further alleged that contrary to the advertisement, Home Savings charged the Talberts fees, including a $250 loan fee; the Talberts' "application for a loan *with payment of the requested fees aforesaid*" (emphasis added) was an offer to have the application considered under the advertisement's terms; Home Savings accepted that offer; and Home Savings breached the contract when it charged the Talberts the $250 fee, which was actually points.

According to those allegations, the Talberts' loan application contained the term that they would pay the $250 loan fee, an offer which Home Savings accepted. As a result, the Talberts' alleged contract provided that they would pay the $250 fee. Yet, the complaint then alleges that Home Savings breached the contract by charging the $250 fee. A breach can only exist where a party fails to carry out a term, promise, or condition of a contract; a breach cannot result from a party's performance of a contract term. Since the alleged contract provided that the Talberts would pay the $250 fee, no breach resulted from Home Savings' collection of it. The Talberts' assertions otherwise—that the contract contained the terms set forth in the advertisement and a breach occurred—are mere conclusions of law or fact, wholly rebutted by the specific factual allegations which comprise the complaint. (See *Groenings*, 215 Ill. App. 3d at 299.) Therefore, the circuit court's dismissal of the breach of contract claim is affirmed.

The Talberts attempt to analogize this case with *Steinberg* (69 Ill. 2d 320, 371 N.E.2d 634). There, the defendant medical school mailed a catalog to plaintiff, a prospective student. Plaintiff applied for admission to the school, paying a $15 application fee, and was

rejected. He filed a class action suit against the school charging it had failed to evaluate applications according to the academic criteria contained in the school's bulletin, and instead had used nonacademic criteria, primarily the ability of the applicant or his family to pay large sums of money to the school. The supreme court held that plaintiff's complaint was sufficient to state a cause of action for breach of contract: the terms contained in the school's brochure constituted an invitation for an offer; the tender of the application, along with the payment of the $15 fee, was an offer to apply; and acceptance of the application and the fee constituted acceptance of the offer to apply under the criteria the school had established. (*Steinberg*, 69 Ill. 2d at 330.) The present case is unlike *Steinberg* because the Talberts' alleged offer did not contain the terms set forth in the advertisement.

The bulk of Home Savings' contentions regarding the breach of contract count should have been made solely in a section 2—619(a)(9) motion to dismiss. Home Savings argues that the written loan documents that actually constitute the parties' contract expressly authorize the $250 fee and do not contain the "no points" language contained in the advertisements. Moreover, Home Savings submits, the parol evidence rule bars the Talberts' claim and it did not charge points as a matter of law. These assertions need not be considered since the breach of contract count was properly dismissed under section 2—615.

### III

•3 The Talberts argue that their complaint states a cause of action for common law fraud. They claim the material misrepresentation is that the $250 fee was not points. In their complaint, the Talberts allege that Home Savings, in its advertisements, knowingly and intentionally made false representations to them concerning whether it would charge points; they reasonably relied on those misrepresentations and were thereby induced to refinance their home mortgage with Home Savings; the misrepresentation is factually shown by the statement Home Savings sent them, which called the $250 fee points for tax purposes; yet, elsewhere in its documents Home Savings characterizes the same fee as a loan origination fee and a loan application fee, among other things; and had Home Savings disclosed to them before the closing that the $250 fee actually was points, they "would have protested and/or not closed the loan."

To state a claim for common law fraud, a plaintiff must allege that any misrepresentations were (1) a false statement of material fact; (2) known or believed to be false by the party making them; (3) intended to induce the other party to act; (4) acted upon by the other

party in reliance upon the truth of the representations; and (5) damaging to the other party as a result. *Mack v. Plaza Dewitt Ltd. Partnership* (1985), 137 Ill. App. 3d 343, 350, 484 N.E.2d 900; see *Connor v. Merrill Lynch Realty, Inc.* (1991), 220 Ill. App. 3d 522, 528, 581 N.E.2d 196.

As noted earlier, a section 2—615 motion to dismiss does not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts. (*Groenings*, 215 Ill. App. 3d at 299.) Fraud claims in particular must include specific allegations of fact from which fraud may be inferred. *Albright v. Seyfarth, Fairweather, Shaw & Geraldson* (1988), 176 Ill. App. 3d 921, 932, 531 N.E.2d 948.

The allegations presented here are simply insufficient to support a common law fraud claim. Undisputedly, the Talberts, in their loan application, offered to pay the $250 fee. The complaint then alleges that they were duped into this mortgage agreement by an advertisement stating that Home Savings would not charge points. Missing from the complaint are factual allegations that the Talberts requested the loan referred to in the advertisement or that their contract was actually negotiated to contain the advertisement's terms. As such, the complaint provides no factual nexus between the advertisement and the Talberts' contract. This court will not make the untenable leap of inferring that the nexus exists when all indications suggest otherwise. Consequently, the circuit court's dismissal of this fraud count was proper.

## IV

The Talberts lastly submit that their complaint sufficiently states a cause of action for a violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1991, ch. 121¹/₂, par. 262 (now 815 ILCS 505/2 (West 1992))) and the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1991, ch. 121¹/₂, par. 312(12) (now 815 ILCS 510/2(12) (West 1992))). This claim is also based on the theory that Home Savings misrepresented the true nature of the $250 fee. The bases for our finding that the Talberts' complaint is factually insufficient to support a common law fraud claim also support the conclusion that this fraud count is similarly defective.

For the above reasons, the circuit court's dismissal of the Talberts' complaint is affirmed in its entirety.

Affirmed.

SCARIANO and McCORMICK, JJ., concur.