SPIROS A. GOFIS et al., Plaintiffs-Appellants, v. THE COUNTY OF COOK et al., Defendants-Appellees.

First District (4th Division)    No. 1—99—4488

Opinion filed July 26, 2001.

408

Baskin, Server, Berke & Weinstein (Burton I. Weinstein, of counsel), and Rosenfeld, Rotenberg, Hafron & Shapiro, (Norman L. Hafron and Courtney D. Carter, of counsel), both of Chicago, for appellants.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Mary Ann Wilson, and Donna M. Lach, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE BARTH delivered the opinion of the court:

This appeal is from the grant of defendants' motion to dismiss plaintiffs' class action lawsuit pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)).

On April 27, 1999, named plaintiffs, Spiros A. Gofis and George Gofis (collectively, plaintiffs or the Gofises), filed the underlying class action lawsuit. The complaint defined the class as all parties who paid a tax automation fee (Fee) on the redemption of general real estate taxes sold at Cook County annual tax sales from the time of the imposition of the Fee through April 6, 1999.[1] The suit challenged the authority of the Cook County treasurer (Treasurer) to collect the $10 Fee, and the second amended complaint sought: (1) an injunction enjoining the Treasurer from further collection of the Fee and requiring the Treasurer to return any Fee previously collected, and (2) an accounting. Defendants, the County of Cook (the County) and the Treasurer, Maria Pappas, in her capacity as the Cook County treasurer and *ex officio* county collector,[2] moved to dismiss pursuant to section 2—615, arguing that the Treasurer's collection of the Fee is allowed by section 21—245 of the Property Tax Code (35 ILCS 200/21—245 (West 1994)); that Cook County's Tax Sale Automation Fund Ordinance additionally authorizes the Treasurer to collect the Fee; that the voluntary payment doctrine bars the claims; and that plaintiffs did not plead the elements of injunctive relief or an accounting.

On November 22, 1999, the circuit court granted the motion to dismiss in its entirety, finding that the Treasurer has the requisite statutory authority to collect the Fee.

The following issues are presented for our review: (1) whether Illinois law authorizes the Treasurer to collect the Fee; (2) whether

---

[1] The Gofises filed a motion for class certification which was entered and continued.

[2] "The treasurers of all counties shall be ex-officio county collectors of their counties." 35 ILCS 200/19—35 (West 1998).

Cook County's Tax Sale Automation Fund Ordinance additionally authorizes the Treasurer to collect the Fee; and (3) whether the voluntary payment doctrine bars the claims in the second amended complaint.[3]

## FACTUAL BACKGROUND

On or about January 29, 1997, the Gofises' property taxes for the nonpayment of 1995 general taxes were sold at the Cook County annual tax sale. The Gofises redeemed the taxes on or about April 22, 1997, by paying $7,796.96 to the county clerk. As part of that redemption, a fee of $200 was designated for the Cook County treasurer's fund, which included the $10 Fee that was collected from the purchaser of the delinquent taxes.

On April 29, 1999, the Gofises filed the original underlying "Class Action Complaint For An Injunction And Accounting against the Cook County Board of Commissioners [(Board)] and the Treasurer," challenging the Treasurer's authority to assess the Fee. Gofis also filed an "Emergency Motion For a Preliminary Injunction And Other Relief," seeking an order restraining defendants from spending any money collected in Fees. This motion was denied on May 4, 1999.

The Board moved to quash service, asserting that it is not a suable entity, and the Treasurer moved to dismiss pursuant to section 2—615. Prior to responding to the motions, the Gofises filed the first amended complaint, which named the County as a defendant instead of the Board of commissioners. Defendants moved to dismiss, and the Gofises responded. The Gofises were subsequently granted leave to file a second amended complaint. In it, they alleged that, although the Board is the County's legislative body which operates pursuant to the County's home rule powers, prior to April 6, 1999, the Board never enacted an ordinance to impose a tax automation fee on the purchaser of delinquent taxes and that when it enacted a tax automation fee ordinance on April 6, 1999, it failed to follow its own rules. It was further alleged that, although she had no authority to collect the Fee, the Treasurer collected it and put it in a "Tax Sale Automation Fund" (Fund), which now contains in excess of $1 million.[4]

---

[3]Reminding this court that it can affirm on any grounds warranted by the record, defendants also briefed the issue of whether plaintiffs failed to plead the requisite elements of injunctive relief and an accounting. Since the trial court did not rely on this argument in granting dismissal, plaintiffs do not brief it at all, and it is unnecessary to our disposition of the present appeal, this issue will not be discussed.

[4]The second amended complaint does not allege that the Treasurer has spent any of the Fees collected.

On September 20, 1999, the County and the Treasurer moved to dismiss the second amended complaint on section 2—615 grounds, arguing that, as a matter of law, the Treasurer is authorized to collect the Fee; that the Gofises' claims are barred by the voluntary payment doctrine; and that the second amended complaint fails to state a claim for injunctive relief or for an accounting. The motion was fully briefed and on November 22, 1999, was granted by the trial court, which issued a memorandum order as to both counts. Plaintiffs filed a timely notice of appeal.

## ANALYSIS

•1 Upon review of the grant of a section 2—615 motion to dismiss, the standard is whether the allegations in the complaint, when viewed in the light most favorable to the plaintiff, sufficiently set forth a cause of action upon which relief may be granted. *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 310 (1996). A ruling on a motion to dismiss does not require a court to weigh facts or determine credibility and therefore we review the complaint *de novo*. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). A complaint should not be dismissed under section 2—615 unless it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 488 (1994). A motion to dismiss for failure to state a cause of action may be acted upon in a class action before determination of certification issues. *Arriola v. Time Insurance Co.*, 296 Ill. App. 3d 303, 307 (1998).

•2 Plaintiffs assert that section 21—245 of the Illinois Property Tax Code does not, alone, authorize the Treasurer to collect the Fee without prior Board approval. Section 21—245 provides:

"§ 21—245. Automation Fee. The county collector in all counties may assess to the purchaser of property for delinquent taxes an automation fee of not more than $10 per parcel. In counties with less than 3,000,000 inhabitants:

(a) The fee shall be paid at the time of the purchase if the record keeping system used for processing the delinquent property tax sales is automated or has been approved for automation by the county board. The fee shall be collected in the same manner as other fees or costs.

(b) Fees collected under this Section shall be retained by the county treasurer in a fund designated as the Tax Sale Automation Fund. The fund shall be audited by the county auditor. The county board shall make expenditures from the fund to pay any costs related to the automation of property tax collections and delinquent property tax sales, including the cost of hardware, software, research and development, and personnel." 35 ILCS 200/21—245 (West 1994).

Plaintiffs insist that a reading of the statute as a whole creates a "clear inference" that it was intended to apply only to those counties with less than 3 million inhabitants. They contend that the fact that there are no similar regulatory provisions for counties with more than 3 million inhabitants "seems strongly to suggest" that the statute was not intended by the legislature to authorize anything with respect to Cook County (and other counties with more than 3 million inhabitants).

Additionally, plaintiffs assert that the use of the words "all counties" in the first sentence may be deemed to create some ambiguity as to just what the legislature was intending to accomplish. Accordingly, plaintiffs refer us to the statute's legislative history. They quote, in their brief, the following comments made during the June 1989 House Debate on the automation fund, by Representative Keane:

"House Amendment #2 in the Conference Committee has been changed. The downstate treasurers *** asked for a tax sale automation fee and what we've done in the Conference Committee is exempt *** at their request ... Cook County. ***
* * *
[A]nd on the tax sale automation fund, Cook County didn't want to be included. This takes them out. This satisfies the downstate treasurers." 86th Ill. Gen. Assem., House Proceedings, June 30, 1989, at 173-74 (statements of Representative Keane).

As further evidence of ambiguity, plaintiffs refer us to a Cook County Board meeting during which counsel for the Board "admitted" that the statute was ambiguous.

Defendants respond that, despite the attempt by plaintiffs to demonstrate ambiguity, the statute plainly and clearly gives to the Treasurer the authority to collect the Fee from the purchasers of delinquent taxes. Defendants maintain that the first sentence of the statute applies to "all counties" (and thus the $10 cap on the amount of the Fee applies to all), whereas the remainder of the statute, which sets forth procedures to be followed by collectors, makes a point of distinguishing between counties of 3 million inhabitants or more and those with fewer than 3 million inhabitants. They also remind us that it is not uncommon in the Illinois Property Tax Code for the legislature to make a distinction between counties on the basis of their population.[5]

Defendants submit that by not prescribing a procedure in the automation fee statute for Cook County, the General Assembly meant to allow Cook County (and other home rule units) to decide its own methodology for collecting and spending the monies from the Fee.

---

[5]See, *e.g.*, 35 ILCS 200/21—190, 21—220, 21—235, 21—240, 21—270, 21—275, 21—330, 21—370 (West 1998).

They maintain that the statute's legislative history should not be examined, since its words are unambiguous. Nevertheless, they argue, an examination of that history reveals it to be consistent with the statutory language used. Specifically, Representative Keane's comment was not inconsistent with the automation fee statute, which merely permits and does not mandate the collection of the Fee.

●3 When interpreting a statute, the primary function of this court is to ascertain and give effect to the intent of the legislature. *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 87 (1995). Where the statutory language is clear and unambiguous, the plain and ordinary meaning of the words will be given effect without resorting to extrinsic aids for construction (*e.g.*, legislative history). *People ex rel. Barker v. Cowlin*, 154 Ill. 2d 193, 197 (1992).

●4 The automation fee statute clearly authorizes county collectors in *all counties* to collect the Fee, and then goes on to make a distinction between counties with more or less than 3 million inhabitants, setting forth collection procedures for the latter category. We read the remarks of Representative Keane, quoted by plaintiffs, to be consistent with the fact that the statute exempts Cook County from its procedural aspects. Plaintiffs' argument to the contrary is without merit. Also, plaintiffs' reference to what an attorney for the Board may have said with respect to the statute's ambiguity is irrelevant, since statutory interpretation is exclusively the province of the court. See *Benbenek v. Chicago Park District*, 279 Ill. App. 3d 930, 932 (1996).

Next, plaintiffs argue that unless a state law expressly limits the home rule unit's power, the home rule unit may act concurrently with the state. From this proposition, they conclude that since the Board is the legislative body of Cook County, it is the only entity that can approve and authorize legislation. In this case, the Treasurer acted (collected the Fee) without prior Board approval, and thus her actions, according to plaintiffs, were unauthorized.

Defendants respond that on the face of the automation fee statute, the General Assembly did not limit its implementation to those instances where there was additional home rule authorization. Defendants are quick to point out that the language of the statute is permissive, so that if the legislative body of a home rule unit wanted to preclude collection of the fee, legislation to that effect could be passed. Further, under no circumstances could the home rule unit collect more than $10 in automation fees. In any event, according to defendants, the statute is sufficient authority for the Fee's collection.

●5 Cook County derives its home rule authority from article VII of the Illinois Constitution of 1970. Article VII provides:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs, including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

Article VII further provides:

> "Home rule units may exercise and perform *concurrently* with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." (Emphasis added.) Ill. Const. 1970, art. VII, § 6(a)(i).

As the constitution makes clear, a home rule unit *may* exercise its concurrent power with the state, but it is not required to do so. And, obviously, the constitution does *not* provide that unless a home rule unit enacts concurrent legislation, state statutes are not binding on those units. Accordingly, we consider the fact that the Board did not initially exercise its authority to enact concurrent legislation to have no bearing on the Treasurer's authority to collect the Fee.

•6 Plaintiffs argue next that the collection of the Fee exceeded the Treasurer's powers. They refer us to an Illinois Attorney General Opinion which provides that "[a] County Treasurer can exercise only the powers delegated to him by general law or county ordinance." 1972 Ill. Att'y Gen. Op. 162. Further, they set forth the statutory definition of the Treasurer's duties, which provides:

> "He shall receive and safely keep the revenues and other public moneys of the county, and all money and funds authorized by law to be paid to him, and disburse the same pursuant to law." 55 ILCS 5/3—10005 (West 1998).

They argue that the statutory language and the Attorney General's opinion are "clear and unambiguous, and do not allow the Treasurer to impose, on its own, the collection of a fee."

Defendants respond that plaintiffs' conclusion is not supported by the Illinois Constitution, which provides, in relevant part:

> "(d) County officers shall have those duties, powers and functions provided by law and those provided by county ordinance. County officers shall have the duties, powers or functions derived from common law or historical precedent unless altered by law or county ordinance." Ill. Const. of 1970, art. VII, § 4(d).

Defendants submit that the constitution does not limit the Treasurer's powers to those provided for by ordinance when a county is a home rule unit. On the contrary, they argue, under the constitution, the Treasurer can act pursuant to both state statutes and county ordinances.

As the trial court found in its memorandum, the phrase "general

law," which appears in the Attorney General opinion cited by plaintiff, and pursuant to which the Treasurer may act, includes state statutes and thus the automation fee statute. We see no reason for this court to conclude otherwise.

●7 We turn now to issue (2), whether Cook County's Tax Sale Automation Fund Ordinance additionally authorizes the treasurer to collect the Fee. Plaintiffs maintain that the Board's attempt to pass the Tax Sale Automation Fund Ordinance was invalid because, in passing it, the Board failed to follow its own rules. They refer us to the Cook County Board rules, which provide that "all motions, resolutions or ordinances that propose, amend, transfer or supplement any appropriations of funds or budget measure shall be referred to the Finance Committee." Rules of the Board of Commissioners of Cook County, art. III, § 3—1(a). This was not done here. Further, they quote an Attorney General's advisory opinion which provides:

> "[T]he county board has the power to 'manage the county funds and county business.' As a complement to this power, the General Assembly has imposed upon the county board the duty to prepare and adopt an annual budget, which must take into account all sources of revenue and all anticipated expenditures of county funds." 1987 Ill. Att'y Gen. Op. 233.

Plaintiffs explain that the Treasurer, with her limited authority, "does not have the power of the Board to manage county funds and county business or to set the county budget." However, according to them, expenditures and revenue gathering are both considered budgetary matters and, as such, Board approval is required before any action may be taken by the Treasurer.

Plaintiffs rely heavily on *In re Application of the Collector*, 132 Ill. 2d 64 (1989) (*Kane County*). In that case, the issue was whether the failure of the legislative body of Kane County to comply with a mandatory ordinance which contained a publication requirement prior to the passage of levy ordinances invalidated the ordinance challenged by the plaintiffs. The court concluded that such failure did invalidate the ordinance.

Plaintiffs assert that the Board's failure to preapprove the collection of the Fee renders the Fee invalid from its inception until April 6, 1999.

Defendants respond that the automation fund ordinance only deals with the collection of the Fee, not allocating or spending it. In fact, they submit, the ordinance subjects the Fee to an annual appropriation. Accordingly, the Board did not violate its own procedural rules when it passed the ordinance, since it did not require approval from the finance committee.

Alternatively, defendants urge that even if the Board violated its procedural rules by failing to refer the ordinance to the finance committee, the ordinance is still valid. In support of this contention, defendants rely primarily on *Landmarks Preservation Council v. City of Chicago*, 125 Ill. 2d 164, 179 (1988) (and cases cited therein), and *Illinois Gasoline Dealers Ass'n v. City of Chicago*, 119 Ill. 2d 391, 404 (1998).

In *Landmarks*, the plaintiffs challenged Chicago's landmark ordinance, which set forth procedures for designating a building a landmark. The landmark ordinance contained the provision that " 'any designation of an area, district, place, building, structure, work of art, or other similar object as a "Chicago landmark" shall only be amended or rescinded in the same manner and procedure as the original designation was made.' " *Landmarks*, 125 Ill. 2d at 170, quoting Chicago Municipal Code § 21—76 (1987). A certain building was certified as a landmark and then decertified without using the same procedure as for certification. The plaintiffs challenged the validity of the decertification ordinance. The court ruled that unless an ordinance was enacted in violation of a constitutional provision or a provision of a state or federal statute, a court may not hold that ordinance invalid. *Landmarks*, 125 Ill. 2d at 180. In so ruling, the court in *Landmarks* acknowledged its earlier decision in *Gasoline Dealers*.

In *Gasoline Dealers*, the plaintiffs alleged that a fuel tax was invalid based on the Chicago city council's failure to comply with an internal rule that provided: " 'Whenever any referred matter *** shall not have been reported back to the City Council by the Committee to which referred, within a period of (60) days, any alderman may move to discharge the committee from further consideration of that matter. The motion to discharge *** shall require the affirmative vote of a majority of all the aldermen entitled by law to be elected.' " *Gasoline Dealers*, 119 Ill. 2d at 394, quoting Rules of the Chicago City Council, R. 41 (1986). In declining to review the claim, the court explained: "Plaintiffs' claim is based on an alleged violation by the city council *** of its own rules. The general rule governing judicial review of substantive legislation is that 'an act cannot be declared invalid for a failure of a house to observe its own rules. Courts will not inquire whether such rules have been observed in the passage of the act.' " *Gasoline Dealers*, 119 Ill. 2d at 404, quoting 1A. Sutherland, Statutory Construction §§ 7.01, 7.04 (4th ed. 1985).

Defendants insist that *Kane County* is distinguishable from *Landmarks* and *Gasoline Dealers* as well as from the instant case, since the publication requirement at issue therein closely paralleled a state statute that contained the same requirement. Consequently, they argue,

for a procedure to be "mandatory" under *Kane County* (meaning failure to comply with it would be grounds for a subsequent invalidation), the procedure must contain requirements based upon a statutory requirement.

Our research reveals that the weight of authority supports the position taken by defendants. See, *e.g., Zeitz v. Village of Glenview*, 304 Ill. App. 3d 586, 593 (1999) (refusing to disturb Glenview's ordinance on the grounds that it allegedly failed to follow its self-imposed requirements); *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 924 (1994) (county can act in derogation of its own procedural rules); *Central Transport, Inc. v. Village of Hillside*, 210 Ill. App. 3d 499, 510 (1991) ("[the Illinois S]upreme [C]ourt has found that [we cannot] adjudicate actions brought to overrule the decisions of a legislative body based upon that legislative entity's alleged failure to follow self-imposed requirements"); *Rodriguez v. Henderson*, 217 Ill. App. 3d 1024, 1037 (1991) (dismissal proper where plaintiffs failed to plead that failure to follow zoning ordinance criteria violated the constitution or state or federal law). Finally, in *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 63 (1995), the plaintiff challenged the validity of a landfill ordinance on the grounds that defendant had failed to comply with its own municipal notice and procedural requirements. Rejecting the claim, the court, citing both *Landmarks* and *Kane County*, concluded:

> " 'This court cannot handle matters which in effect are attempts to overrule decisions of a legislative body based upon alleged failure to follow requirements imposed by that body on itself. We have authority to invalidate legislation only upon grounds that the enactment violates a provision of the Federal or State constitution or violates the mandate of a State or Federal statute.' [Citation.]" *City of Elgin*, 169 Ill. 2d at 63.

We decline to find the automation fund ordinance invalid solely on the grounds that the Board may have failed to follow its own procedures in its enactment.

•8 Finally, we turn to issue (3), whether plaintiff's claims are barred by the voluntary payment doctrine.[6] Plaintiffs argue that it cannot be controverted that the loss of one's real estate for failure to pay is an obvious form of compulsion. Therefore, they conclude, the voluntary payment doctrine does not bar this action. Although they acknowledge that the voluntary payment doctrine provides that "mon-

---

[6]Plaintiffs remind us that although the trial court did not rule on this issue, it is likely to arise in the event that this case is reversed and remanded, and thus they invite this court to "make comment" on it.

ey voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment cannot be recovered back on the sole ground that the claim was illegal" (*West Suburban Medical Center v. Hynes*, 173 Ill. App. 3d 847, 856 (1988)), plaintiffs insist that the doctrine does not apply in a case such as theirs, where payment was involuntary. They explain that in order to redeem their taxes and protect their property, they had no choice but to pay the fee. Further, they insist that the requisite "protest" to the fee has taken the form of the instant lawsuit and compare their situation with the plight of the plaintiffs in *West Suburban.*

Defendants respond that the purported class of plaintiffs herein are delinquent taxpayers who, through no fault of the County or the Treasurer, put themselves in a situation of having to pay the Fee to prevent being at risk of losing their property.

Moreover, defendants assert, plaintiffs failed to plead that payment by either the tax purchasers or the Gofises was involuntary or made under protest; hence, the claim is barred for this reason as well.

Defendants distinguish *West Suburban*, on which plaintiffs rely, from the facts of the instant case. In *West Suburban*, a hospital paid back taxes based on certificates of error. The posting of the certificates of error operated as an objection to the tax sale, which should have excluded the property from such a sale. Nonetheless, admittedly in error, the taxing officials offered the hospital's property for sale. Later, again admittedly in error, the taxing officials issued a certificate of purchase to the tax buyer. To avoid the issuance of a tax deed as well as the beginning of another penalty period, the hospital redeemed the property and filed a declaratory action the following day. The tax purchaser argued that the voluntary payment doctrine was a bar to the hospital's action. This court disagreed for several reasons, most importantly, that the hospital's payment of back taxes recalculated by the certificates of error itself constituted a protest and objection to the tax sale. Then, despite assurances to the contrary, the hospital's taxes were sold, and the tax purchaser received a certificate of purchase. Finally, the hospital was threatened with the imminent increase of interest plus the possible loss of its property. This court concluded that "[d]espite the hospital's continued protests, it finally had no immediate relief except redemption." *West Suburban*, 173 Ill. App. 3d at 856. Here, in contrast, plaintiffs simply failed to pay their taxes, and thus, they themselves were responsible for the fact that tax sales ensued and redemption was required should they wish to regain their property, as was payment of the Fee. Accordingly, although *West Suburban* is an example of the type of circumstances wherein the volun-

tary payments doctrine will not act as a bar to a taxpayer's claim for relief, defendants maintain, the facts of the instant case do not warrant such a determination.

The voluntary payment doctrine provides that money voluntarily paid cannot be recovered solely because the government's claim to such funds was unlawful. *West Suburban*, 173 Ill. App. 3d at 855. Although the Gofises assert that they were compelled to pay the Fee or risk losing their property, we agree with defendants that neither the County nor the Treasurer "compelled" plaintiffs to fail to pay their taxes (the only circumstance in which the Fee is even collected), nor was it unexpected that the consequence of failure to pay taxes due on real estate may be the loss thereof. Additionally, in our view, defendants have cogently distinguished *West Suburban*, in which the government made several errors to which the hospital repeatedly registered objections, from the instant case, in which the Fee was legitimate and no objections were made to its imposition.[7] We perceive no conflict with that decision and our holding herein.

For the foregoing reasons, we affirm the trial court's grant of dismissal pursuant to section 2—615 because collection of the challenged fee is authorized by section 21—245 of the Property Tax Code.

Affirmed.

HARTMAN, P.J., and HOFFMAN, J., concur.

---

[7]Plaintiffs have cited no case law in support of the proposition that objection can take the form of a subsequent lawsuit.