NO. 3--01--0482

                                                                 

IN THE 

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

KLARA HOOPINGARNER,  ) Appeal from the Circuit Court 

    ) of the 10th Judicial Circuit,

Plaintiff-Appellant,  ) Peoria County, Illinois

  )

v.  ) 

    ) No. 99--L--333

JENNIFER L. STENZEL and  ) 

FRED L. ELMORE,  ) 

  ) Stuart P. Borden,

Defendants-Appellees.  ) Judge Presiding   

                                                                   
 

JUSTICE HOMER delivered the opinion of the court:

                                                                  

Klara Hoopingarner filed a three-count complaint against Jennifer Stenzel, New York Life Insurance and Annuity Corporation (New York Life) and Fred Elmore.  Count I alleged that Stenzel violated the Illinois Power of Attorney Act, count II alleged that New York Life committed fraud, and count III alleged fraud against Fred Elmore.  Count II was dismissed, and Hoopingarner does not appeal that dismissal.  The trial court granted summary judgment in favor of Stenzel on count I and granted Elmore's motion to dismiss count II.  Hoopingarner appeals, and we affirm.  
 
BACKGROUND

In 1989, Helen Peters was issued an annuity by New York Life.  Peters' daughter, Karen Elmore, and granddaughter, Jennifer Stenzel, were named the beneficiaries.  Karen Elmore died in August of 1993.  In October of 1993, Peters executed her last will.  She named Jennifer Stenzel the sole beneficiary, and First of America Bank was named trustee.  That same year, Peters executed a power of attorney naming her son-in-law, Fred Elmore, and Jennifer Stenzel her attorneys in fact.  

In 1995, Klara Hoopingarner began working for Helen Peters as a housekeeper.  In 1996, Peters executed a change of beneficiary form, designating Hoopingarner the sole beneficiary of the New York Life annuity.  Peters also executed a codicil to her will giving the annuity and $15,000 to Hoopingarner.  Robert Kunz, an attorney who had previously done work for Hoopingarner, prepared the codicil and helped Peters complete the New York Life change of beneficiary form.  At the time Peters completed the change of beneficiary form, Kunz made a copy of it and gave the original to Peters.  Peters did not send the completed form to New York Life.  Kunz died in 1997.  In March of 1999, Peters health worsened, and Hoopingarner called Barbara Patterson, Kunz's former secretary and Hoopingarner's personal friend, and asked her to send the change of beneficiary form to New York Life.  Patterson mailed the copy of the form to New York Life by express mail.

     Soon after the copy of the change of beneficiary form was sent to New York Life, Fred Elmore, the agent for the policy, was notified that the beneficiary had been changed.  He then contacted Stenzel and informed her.  The next day, Stenzel signed a change of beneficiary form as Peters' attorney in fact, designating First of America Bank the beneficiary of the annuity as trustee, with Stenzel as the sole beneficiary of the trust.  One week later, upon advice from an attorney, Stenzel requested a full surrender of the annuity, and the proceeds were placed into Peters' checking account.  Two months later, Peters died.  Upon her death, the original change of beneficiary form and codicil were not found.     

Elmore filed a petition to probate Peters' will, and Hoopingarner filed a three-count complaint against Stenzel, New York Life, and Elmore.  New York Life was later dismissed.  In her complaint, Hoopingarner alleged that the change of beneficiary form completed by Peters was effective to make her the beneficiary of the annuity.  She further claimed that Stenzel did not have the authority to change the beneficiary and surrender the annuity and that Stenzel acted in bad faith when she did so.  Hoopingarner also sought damages against Elmore for fraud associated with his acts of helping Stenzel to change the beneficiary and surrender Peters' annuity.  

Stenzel filed a motion for summary judgment arguing that (1) the change of beneficiary form was ineffective to make Hoopingarner the beneficiary of the annuity, (2) the power of attorney given by Peters authorized her to surrender the annuity, and (3) she acted in good faith in her transactions.  Elmore filed a motion to dismiss pursuant to section 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 2000) arguing that (1) the complaint failed to state a cause of action for fraud, (2) the complaint improperly included a cause of action for breach of fiduciary duty for which the plaintiff lacked standing to claim, and (3) the complaint improperly sought punitive damages.  Hoopingarner then filed a motion for partial summary judgment.  Stenzel's and Elmore's motions were granted by the trial court, and Hoopingarner's motion was denied.  Hoopingarner appeals.  

DISCUSSION 

I. Grant of summary judgment to Stenzel

An appellate court reviews a grant of summary judgment 
de
 
novo
.  
Warren v. Burris
, 325 Ill. App. 3d 599, 603, 758 N.E. 2d 889, 892 (2001).  In ruling on a motion for summary judgment, the trial court must view all evidence in the light most favorable to the nonmovant.  
Warren
, 325 Ill. App. 3d at 602-03, 758 N.E. 2d at 892.  

Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  
Warren
, 325 Ill. App. 3d at 602, 758 N.E. 2d at 892.  Hoopingarner claims that the trial court's grant of summary judgment was inappropriate for the following reasons:  (1) whether Peters had effectively changed her beneficiary was a question of fact for the jury; (2) the trial court's holding that Stenzel had the authority to surrender the annuity was erroneous; and (3) the trial court failed to require Stenzel to prove that she did not violate her duty as a fiduciary. 

Stenzel's motion for summary judgment was granted because the court found, as a matter of law, that the attempted change of beneficiary form signed by Peters in 1996 was ineffective because Peters did not forward the form to New York Life; rather, a copy was sent in by someone else over two and one-half years after it had been completed.  Hoopingarner asserts that whether Peters effectively changed the beneficiary of the annuity by completing the change of beneficiary form in 1996 was a question of fact for a jury to decide.  

Questions as to the effectiveness of a change of beneficiary are generally for the jury.  See 
Smith
, 106 Ill. App. 3d at 323, 435 N.E.2d at 1192.  Courts have, however, granted summary judgment and found a change of beneficiary ineffective when the insured clearly failed to comply substantially with the requirements for changing a beneficiary.  See 
Kniffen v. Kniffen
, 119 Ill. App. 3d 106, 456 N.E.2d 659 (1983) (finding summary judgment was appropriate where the insured never filed written notice of a change of beneficiary). 

Before an insured can change the designated beneficiary, the insured must intend to do so and must make some overt act evidencing the intent.  
Travelers Insurance Co. v. Smith
, 106 Ill. App. 3d 318, 320, 435 N.E.2d 1188, 1190 (1982).  Where the insurer has specified in the policy the method for changing the beneficiary, some type of compliance with the policy terms is required.  
Smith
, 106 Ill. App. 3d at 320, 435 N.E.2d at 1190.  Illinois generally requires that the insured substantially comply with the policy terms.  
Smith
, 106 Ill. App. 3d at 320-21, 435 N.E.2d at 1190.
 

The policy at issue provides that Peters had the right to change her beneficiary while living by "using this signed notice, furnishing the necessary information to the Company/Corporation ***."  Peters failed to substantially comply with the terms of the policy because she never sent the change of beneficiary form to New York Life or furnished any information to New York Life regarding a desire to change the beneficiary of the annuity.

Under these circumstances, we find that there is no genuine issue of material fact and hold, as a matter of law, that Peters did not substantially comply with the requirements for changing the beneficiary of her annuity.  Consequently, the trial court's grant of summary judgment was appropriate.  

Hoopingarner further argues that the trial court's grant of summary judgment was inappropriate because Stenzel did not have the authority under her power of attorney to change the beneficiary of Peters' annuity to the First of America Bank as trustee and to ultimately surrender the annuity.  Stenzel's act of changing the beneficiary had no effect because the annuity was subsequently surrendered.  Therefore, the only real issue is whether Stenzel had the authority to surrender the annuity.  The trial court found that Stenzel had the authority under the power of attorney to surrender the annuity, and we agree. 

Under the Illinois Power of Attorney Act (Act), a power of attorney may be classified as an Article II durable power of attorney or an Article III statutory short form power of attorney for property.  755 ILCS 45/1--1 
et
 
seq
. (West 2000).  The trial court found as a matter of law that the power of attorney created by Peters was an Article II type because it did not substantially comply with the form provided in Article III (755 ILCS 45/3-3 (West 2000)).  We agree with the trial court that the power of attorney is governed by Article II.  

Under Article II of the Act, the provisions of the power of attorney control to determine the powers, duties, rights, limitations, immunities and other terms applicable to the agency relationship.  755 ILCS 45/2--4(a) (West 2000).  Under the terms of the power of attorney, Stenzel had the right to surrender the annuity.  Specifically, paragraph one gave Stenzel the right to deposit in or withdraw from any depository, any moneys or other property belonging to Peters.  Furthermore, paragraph seven of the power of attorney gave Stenzel the authority to take steps to recover Peters' annuities.  Finally, paragraph eight gave Stenzel the authority to dispose of any of Peters' insurance.  Based on these express grants of authority, we find that it was within Stenzel's power to surrender the annuity and place it in Peters' bank account.  

Finally, Hoopingarner argues that Stenzel acted in bad faith by surrendering the annuity and placing it in Peters' account, of which Stenzel was the sole beneficiary.  Hoopingarner further argues that it should not have been her burden to establish that Stenzel acted in bad faith but that Stenzel should have been required to prove that she acted in good faith.  

The trial court found that Article II of the Act requires that Hoopingarner provide evidence that Stenzel acted in bad faith, and we agree.  Article II of the Act provides that in exercising powers granted under a power of attorney, the agent shall take the principal's estate plan into account insofar as it is known to the agent and shall attempt to preserve the plan, but the agent shall be liable to a beneficiary only if the agent acts in bad faith.  755 ILCS 45/2--9 (West 2000).  

Section 2--9 of the Act clearly establishes that an agent will only be liable if the agent acts in bad faith.  Therefore, there must be some showing that the agent acted in bad faith.  We agree with the trial court that Hoopingarner failed to present evidence to establish bad faith by Stenzel as required by section 2--9.  

Section 2--9 of the Act provides that the agent should take into account the principal's estate plan so far as it is known to the agent.  755 ILCS 45/2--9 (West 2000).  The evidence supports that Stenzel did consider Peters' estate plan as it was known to her when she surrendered the annuity.  No evidence was presented to show that Peters ever communicated to Stenzel a desire to change her estate plan or to make Hoopingarner the beneficiary of the New York Life annuity.  Because surrendering the annuity appeared to be consistent with Peters' estate plan as it was known to Stenzel, there was no evidence that Stenzel acted in bad faith. 

    The Act further provides that an agent who acts with due care for the benefit of the principal shall not be liable or limited merely because the agent also benefits from the act.  755 ILCS 45/2--7 (West 2000).  Even though Stenzel may have benefitted from her acts as Peters' attorney in fact, it was necessary for Hoopingarner to present evidence that Stenzel acted with a lack of due care.  Because Hoopingarner failed to do so, summary judgment was appropriate.  

II. Granting Elmore's motion to dismiss

An appellate court reviews a trial court's grant of a motion to dismiss 
de
 
novo
.  
Gofis v. County of Cook
, 324 Ill. App. 3d 407, 411, 754 N.E.2d 374, 378 (2001).  Upon review of the grant of a motion to dismiss for failure to state a claim, the standard is whether the allegations in the complaint, when viewed in the light most favorable to the plaintiff, sufficiently set forth a cause of action upon which relief may be granted. 
 
Gofis
, 324 Ill. App. 3d at 411, 754 N.E.2d at 378.  A complaint should be dismissed under section 2--615 if it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief.  
Gofis
, 324 Ill. App. 3d at 411, 754 N.E.2d at 378.  

Hoopingarner claims that she properly pled a cause of action for either common law fraud or constructive fraud against Elmore.  We agree with the trial court that Hoopingarner failed to allege sufficient facts to state a claim for either common law fraud or constructive fraud.      

In order to state a claim for common law fraud, a plaintiff must allege a misrepresentation by the defendant that was: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intended to induce the other party to act; (4) acted upon by the other party in reliance upon the truth of the representations; and (5) damaging to the other party as a result.  
Talbert v. Home Savings of America, F.A.
, 265 Ill. App. 3d 376, 381-82, 638 N.E.2d 354, 358 (1994).  Fraud claims must include specific allegations of fact from which fraud may be inferred.  
Talbert
, 265 Ill. App. 3d at 382, 638 N.E.2d at 359.  Hoopingarner has failed to set forth a claim for common law fraud because her complaint does not allege that Elmore knowingly made any false statement upon which Hoopingarner relied.  In fact, Hoopingarner does not allege that Elmore made any statements to her at all.  Therefore, Hoopingarner failed to state a claim for common law fraud.     

To state a claim for constructive fraud, a plaintiff must allege facts establishing the breach of duty arising from a fiduciary or confidential relationship whereby the fiduciary has profited.  
Cessna v. City of Danville
, 296 Ill. App. 3d 156, 168-69, 693 N.E.2d 1264, 1272 (1998).  Hoopingarner alleged that Elmore owed a fiduciary duty to Peters and alleged facts to support her contention that he breached his duties.  We find that these allegations are not sufficient to assert a claim for constructive fraud for two reasons.  First, Hoopingarner does not have standing to assert a breach of fiduciary duty on behalf of Peters because she is not a beneficiary.  See 
Chicago Park District v. Kenroy, Inc.
 78 Ill. 2d 555, 565, 402 N.E.2d 181, 186  (1980) (holding that a beneficiary may seek restitution based upon allegations of a breach of fiduciary duty).  Second, even if Hoopingarner were able to allege Elmore's breach of duty on behalf of Peters, Hoopingarner has failed to allege that Elmore profited from his actions.  As a result, Hoopingarner has failed to allege the essential elements for a claim of constructive fraud. 

Because Hoopingarner failed to set forth the elements of either common law fraud or constructive fraud, the trial court properly granted Elmore's motion to dismiss, and it is unnecessary for us to examine the additional arguments raised by Elmore in support of his motion to dismiss. 

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BRESLIN, J. concurred.

JUSTICE HOLDRIDGE, dissenting:

Summary judgment is appropriate only when the pleadings, depositions, admissions and affidavits demonstrate no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  
Warren v. Burris
, 325 Ill. App. 3d 599, 603 (2001).  I believe that a genuine issue of material fact exists over whether Helen Peters substantially complied with the policy terms to effect a change of beneficiary.  Evidence exists that it was Peters' intent to change her beneficiary, but to purposely delay submitting the change of beneficiary form due to her belief that Stenzel and Elmore would fight her actions.  This evidence could convince a trier of fact that Peters had substantially complied with the requirements to change her beneficiary.

Likewise, a genuine issue of material fact exists as to whether Stenzel was aware of Peters' desire to change her estate plan by making Hoopingarner the beneficiary of the New York Life annuity.  

As a genuine issue of material fact exists, I would reverse the trial court's grant of summary judgment to the defendants.  I therefore respectfully dissent.