NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 21, 2017[*]
Decided December 21, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1594

| | |
|---|---|
| LINDA CASEY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:14-cv-03541 |
| AMERICAN INTERNATIONAL GROUP, INC., | Elaine E. Bucklo, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Linda Casey believes that she is the sole beneficiary of an annuity administered by American International Group. She is listed as one of several beneficiaries on the application for the annuity. She argues that a second application made her the only beneficiary. Upon the death of the annuity's owner, AIG paid all the beneficiaries listed on the first application, including Casey. Casey sued American General to collect as the

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

sole beneficiary. The district court judge granted AIG's motion for summary judgment. Because the second application did not change the beneficiaries, we affirm.

The following facts are undisputed. Casey, along with a co-owner Natalie Bailey, applied for an annuity on March 12, 2008. The application says: "In the event of death of Owner, surviving Joint Owner becomes the Primary Beneficiary. If you do not want the Joint Owner to be the Primary Beneficiary, check here and name Beneficiary below." They checked the corresponding box, and on the line to name the beneficiary they wrote "See Attached." The attached document designates 18 beneficiaries and their shares in the annuity. Casey was to receive 8%. Bailey and Casey signed the application.

AIG issued the policy, for $97,000, on March 17. The policy advises the owners about changing beneficiaries: "If you make a beneficiary change, the change will take effect on the date you sign the change request form. However, we are not responsible for any payment or other action taken before we have received and acknowledged in writing your change request." The change request form requires that the owner name the new beneficiaries, provide the owner's phone number, and have someone witness the owner's signature. Regarding the death of a joint owner of an annuity, the policy says: "[T]he surviving joint owner, if any, will be treated as the primary beneficiary (unless the joint owners have notified us in writing prior to the death of a joint owner that the surviving joint owner will not be the primary beneficiary)."

Bailey and Casey submitted a second application for an annuity three weeks later, but they did not complete it. It asks "Do you have any existing life insurance policies or annuity contracts?" and "Will this annuity replace or change any existing life insurance or annuity contract in this or any other company?" They did not answer:

The second application names Casey and Bailey as joint owners. They left empty the box to designate a beneficiary other than the joint owner. They omitted a phone number and witness signature. They listed the same policy number as the first application, but

identified a different policy date, March 14. AIG received the application on April 8, but it gave Casey no acknowledgment of a change of beneficiaries.

Bailey died in May 2011, and uncertainty about the proper beneficiary ensued. Casey contacted AIG to assert that the second application made her the sole beneficiary. AIG initially said that it had no second application. So Casey submitted a claim for the 8% share that she was due under the first application. She received and deposited a check reflecting that share. AIG later informed Casey that it had the second application, and Casey again asked for payment as the annuity's sole beneficiary. At first, she made some headway. AIG's internal notes, from November 2011, read "per the application scanned 04/08/08 this policy has joint rights of survivorship." AIG also wrote to Bailey's estate's attorney, stating that the unchecked box in second application "indicat[es] that [Bailey and Casey] would like for the surviving joint owner to receive the death benefits should one joint owner pass away." But "after review with our legal department," AIG concluded that it had properly distributed the annuity under the first application because "there were no subsequent beneficiary changes on record."

Casey brought this breach-of-contract action against AIG in Illinois state court. AIG removed the case to federal court where the judge granted its motion for summary judgment. The judge ruled that Illinois requires strict compliance with the policy to change a beneficiary, and Casey did not strictly comply with the terms for changing the beneficiary because she filed a second application rather than a "change request form." Further, the judge reasoned, even if the second application were considered a "change request form," Bailey and Casey did not strictly comply because they did not check the box to say that the second application was to supersede the first.

On appeal, Casey argues that AIG's records create a triable question whether Casey "strictly complied" with the policy's requirements for becoming the annuity's sole beneficiary.

We first comment about the "strict compliance" standard that Casey uses. Illinois law no longer requires strict compliance with a policy's terms to change a beneficiary; substantial compliance is enough. *See Minn. Life Ins. Co. v. Kagan*, 724 F.3d 843, 849 (7th Cir. 2013); *Hoopingarner v. Stenzel*, 768 N.E.2d 772, 776 (Ill. App. Ct. 2002); *Travelers Ins. Co. v. Smith*, 435 N.E.2d 1188, 1190 (Ill. App. Ct. 1982). Although Casey has analyzed her claim only under the strict standard, on our de novo review we will consider both standards, construing the evidence in favor of Casey. *See Kagan*, 724 F.3d at 848–49.

Under a strict-compliance standard, Casey loses. Strict compliance requires "exact compliance" with the terms of the policy. *Kagan*, 724 F.3d at 849. To change the beneficiary, the annuity policy requires that the annuity owner submit a "change request form" *and* that AIG acknowledge the request in writing. Neither event occurred. First, Bailey and Casey never submitted a change request form. They submitted something else—a second application. Even if we deemed the second application to be an acceptable form, it did not contain the information required on the actual change request form, like the owner's phone number and a witness's signature. Second, at no time before Casey accepted AIG's payment under the terms on the first application did she receive from AIG an acknowledgement of a change to the beneficiaries. Under the strict terms of the policy, AIG is "not responsible" for a change in beneficiary that it has not acknowledged.

The second application also did not "substantially comply" with the terms for changing the beneficiary. Substantial compliance requires evidence showing "(1) 'a clear expression of the insured's intention to change beneficiaries,' and (2) a 'concrete attempt by the insured to carry out his intention as far as was reasonably in his power.'" *Kagan*, 724 F.3d at 851–52 (quoting *Dooley v. James A. Dooley Assocs. Employees Ret. Plan*, 442 N.E.2d 222, 227 (Ill. 1982)) (internal formatting omitted). Neither factor is present. Casey and Bailey did *not* check the box to designate that the second application supersedes the first or the box to acknowledge that they even had an existing policy. Although they listed their policy number on the second application, they confusingly listed a different policy date. Thus the second application does not evince either a clear intent or concrete attempt to change beneficiaries. *See Dooley*, 442 N.E.2d at 226–27 (collecting cases).

Casey responds that the AIG's notes and correspondence show that she and Bailey effectively changed beneficiaries. But these records show, at most, uncertainty. AIG briefly thought that the second application made Casey sole beneficiary, but after further review it determined that Casey and Bailey had made no valid beneficiary changes. AIG's uncertainty about whether the second (and incomplete) application had changed beneficiaries is evidence that Casey and Bailey had *not* demonstrated clear intent to change beneficiaries. And even if they had clearly intended a change, because they omitted stating that the second application superseded the first, they did not make a "concrete attempt" to change beneficiaries "as far as was reasonably in [their] power." *See Dooley*, 442 N.E.2d at 226–27.

Casey has one last argument, but it is unavailing. She contends that she did not have to change the beneficiary because under the first application she was the joint owner and thus the sole beneficiary. But she already conceded this point in her complaint: "[P]ursuant to the Owner's Beneficiary Designation in the application dated March 12, 2008, [Casey] . . . would not be the primary beneficiary of the policy." She cannot argue to the contrary on appeal.

Finally, to the extent that on appeal Casey argues the lawyer who represented her in district court did so ineffectively, we reiterate that an appeal in a civil matter is not the proper forum to raise such a claim. *See Pendell v. City of Peoria*, 799 F.3d 916, 918 (7th Cir. 2015).

AFFIRMED.