ANITA CESSNA, Plaintiff-Appellant, v. THE CITY OF DANVILLE *et al.*,
Defendants-Appellees.

Fourth District   No. 4—97—0185

Argued September 16, 1997.—Opinion filed April 22, 1998.

Ora J. Baer II (argued), of Law Offices of Ora J. Baer II, of Champaign, for appellant.

John P. Wolgamot and Steven L. Blakely (argued), both of Acton & Snyder, of Danville, for appellee City of Danville.

Irving M. King (argued) and Kelly J. Hupfeld, both of King & Woody, of Chicago, for other appellees.

PRESIDING JUSTICE GARMAN delivered the opinion of the court:

Plaintiff Anita Cessna was discharged in September 1995 from her employment as a bus driver for the Danville Mass Transit Company, which is owned and operated by defendant City of Danville (City). In May 1996, she filed a four-count complaint in the circuit court of Vermilion County against the City; Local 214D of United Food & Commercial Workers International Union, AFL-CIO and CLC (Local Union); and United Food & Commercial Workers International Union, AFL-CIO and CLC (International Union) (collectively, Unions). She alleged breach of contract and constructive fraud against the City, breach of duty of fair representation against the Local Union, and constructive fraud against the International Union. On defendants' motions, the circuit court dismissed all four counts with prejudice. Plaintiff appeals. We affirm in part, reverse in part and remand with directions.

In count I against the City (styled breach of contract), plaintiff alleged that (1) on September 19, 1995, she was discharged from her employment by the City for alleged failure to stop her bus at a stop sign; (2) on that date, she was a member of the Local Union and was a beneficial party to a collective-bargaining agreement (Agreement) between the City and the Local Union; (3) certain provisions of the Agreement stated that the City may suspend or discharge an employee for "just cause" and that the authority of the City to discipline or discharge shall not be arbitrary, capricious, or discriminatory in nature; (4) the City disregarded statements from plaintiff, another bus driver, and three bus passengers stating that plaintiff did stop her bus at the stop sign; (5) the City breached the Agreement by discharging plaintiff without just cause and by discharging her in an arbitrary, capricious, or discriminatory manner, including applying rules and regulations it promulgated pursuant to the Agreement in an arbitrary and capricious manner; (6) plaintiff exhausted her administrative remedies through the third step of the grievance procedure of the Agreement; and (7) the City denied the third-step grievance on December 1, 1995, and the Local Union refused to arbitrate the grievance beyond that point. Plaintiff asked for back wages and reinstatement with full benefits and seniority.

Count II of the complaint against the City (styled constructive fraud) alleged that (1) plaintiff's discharge by the City constituted a constructive fraud in one or more of the following ways: (a) the origi-

nal "fact" hearing held by the City was conducted by the City's personnel director, who had an inherent conflict of interest; (b) plaintiff was only given three days between notice of hearing and the hearing date to obtain witnesses and information; (c) the City failed to provide a procedure to obtain the testimony of witnesses on plaintiff's behalf; (d) the City's personnel director made no findings as to why plaintiff's testimony was not credible; (e) the decision to discharge plaintiff was made on the recommendation of the personnel director, not based upon the evidence presented at the hearing; (f) plaintiff was discharged without consideration of her employment record, as required by the Danville Mass Transit Company's rules and regulations; (g) the City failed to consider and refused to record eyewitness testimony presented at the second-stage grievance hearing; (h) the City discharged plaintiff without just cause; and (i) the City applied inherently inconsistent rules in discharging plaintiff; and (2) plaintiff exhausted her administrative remedies through the third-step grievance and the Local Union refused to arbitrate the grievance beyond that point. In addition to back wages and reinstatement, plaintiff asked for punitive damages.

Count III of the complaint was against the Local Union (styled breach of duty of fair representation) and alleged that (1) plaintiff pursued the first three steps of the grievance procedure with her personal attorney in cooperation with the Local Union; (2) the Local Union voted in a sealed vote on September 24, 1995, on whether to arbitrate plaintiff's grievance; (3) the Local Union breached its duty of fair representation in one or more of the following ways: (a) without consulting plaintiff or her attorney, the Local Union president entered into a collusive "understanding" with the City's mayor that plaintiff be reinstated without payment of back pay or benefits; (b) the Local Union decided to ignore its duty to represent plaintiff because she had hired an attorney; (c) at a meeting on December 10, 1995, the Local Union voted to ignore and destroy the September 24, 1995, sealed vote and voted to refuse to arbitrate plaintiff's termination, despite her request that the Local Union proceed with arbitration; and (d) the decision not to demand arbitration was not an exercise of good-faith judgment on the part of the Local Union, but was made because of hostility toward plaintiff; and (4) the time period under the Agreement within which to arbitrate plaintiff's grievance ended on December 11, 1995. Plaintiff asked for a judgment for back wages.

Count IV of the complaint against the International Union (styled constructive fraud) alleged that (1) on information and belief, the International Union by its duly authorized representative, Vernon Frakes, willfully conspired with and directed its Local Union to re-

fuse to arbitrate plaintiff's grievance due to hostility toward plaintiff and (2) the actions of the International Union constitute a constructive fraud. Plaintiff asked for a judgment for back wages and punitive damages.

On June 28, 1996, the Unions filed a joint motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1994)), alleging that the claims plaintiff asserted in her complaint against the Unions are within the exclusive jurisdiction of the Illinois State Labor Relations Board (Board) pursuant to the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 *et seq.* (West 1994)) and the circuit court therefore lacked subject-matter jurisdiction to hear them.

On July 9, 1996, the City filed a motion pursuant to section 2—619 of the Code, seeking to dismiss counts I and II. The motion alleged that (1) plaintiff had failed to exhaust her remedies under the grievance procedure set forth in article 6 of the Agreement and (2) the Board has exclusive jurisdiction under the Act over collective-bargaining matters between employee organizations and units of local government and the circuit court therefore lacked subject-matter jurisdiction to hear plaintiff's claims.

Article 6 of the Agreement is entitled "Grievance Arbitration" and provides that if the parties to the Agreement are unable to reach a settlement of the grievance using the procedures outlined in article 5, either party may submit the grievance to arbitration by a demand for arbitration to the other party within six working days after denial of the grievance in the last step of the grievance procedure. The parties to the Agreement are the City and the Local Union.

On February 13, 1997, the circuit court granted the City's motion to dismiss, finding that plaintiff had failed to exhaust her administrative remedies. On the same date, the court also entered a separate order granting the Unions' joint motion to dismiss, ruling that exclusive jurisdiction over plaintiff's claims against the Unions lies with the Board and the circuit court lacked subject-matter jurisdiction over them.

■ On appeal, plaintiff advances three arguments: (1) the circuit court has jurisdiction to adjudicate her causes of action against the Unions; (2) she did in fact exhaust her contractual remedies under the Agreement and, thus, she is entitled to pursue her claims against the City in the circuit court; and (3) the circuit court has jurisdiction to adjudicate her causes of action against the City.

> "A trial court should dismiss a cause of action only if it is apparent that no set of facts can be proven that will entitle plaintiff to recover. [Citation.] Motions to dismiss admit facts well pleaded

[citation], together with all reasonable inferences which can be drawn from those facts [citation], but does not admit conclusions unsupported by allegations of specific facts on which such conclusions rest [citation], or conclusions of law. [Citation.] A reviewing court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted." *Munizza v. City of Chicago*, 222 Ill. App. 3d 50, 51-52, 583 N.E.2d 561, 563 (1991).

Plaintiff argues that the circuit court has subject-matter jurisdiction to adjudicate her causes of action against the Unions. She relies on the Labor Management Relations Act of 1947 (LMRA) (29 U.S.C. §§ 141 through 187 (1994)) and federal rulings thereunder as persuasive authority for interpretation of the Act. She points out the similarities between the sections in the two statutes regarding what constitutes an unfair labor practice. Compare 29 U.S.C. §§ 158(a), (b) (1994) (employer and labor organization unfair labor practices, respectively), with 5 ILCS 315/10(a), (b) (West 1996) (employer labor organization unfair labor practices, respectively). She also relies on *Vaca v. Sipes*, 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967), where the Supreme Court held that jurisdiction of the courts and the National Labor Relations Board (NLRB) over a cause of action for breach of the duty of fair representation is concurrent. The *Vaca* holding was reaffirmed in *Breininger v. Sheet Metal Workers International Ass'n Local Union No. 6*, 493 U.S. 67, 75, 107 L. Ed. 2d 388, 401, 110 S. Ct. 424, 430 (1989). It has been held that rulings of the NLRB and the federal courts construing the LMRA are persuasive authority for similar provisions in the Act. See *American Federation of State, County & Municipal Employees v. Illinois State Labor Relations Board*, 190 Ill. App. 3d 259, 264, 546 N.E.2d 687, 690-91 (1989). Thus, according to plaintiff, logic dictates that her cause of action for breach of the duty of fair representation should be treated in the same manner as a similar federal cause of action.

In dismissing plaintiff's claims against the Unions, the trial court relied on a decision of the first district, *Foley v. American Federation of State, County, & Municipal Employees, Council 31, Local No. 2258*, 199 Ill. App. 3d 6, 556 N.E.2d 581 (1990). In that case, plaintiffs were parole officers employed by the Illinois Department of Corrections. They were also members of the defendant union. They filed a grievance with the union over actions of the employer, and the union processed the grievance through the third step of the grievance procedure established by the collective-bargaining agreement. The union refused to arbitrate the grievance on the basis that the claim could

not prevail. Plaintiffs filed a complaint in the circuit court alleging that the union had breached its duty of fair representation and the employer had breached the collective-bargaining agreement. The circuit court dismissed the complaint, finding, as to the union, that exclusive jurisdiction lay with the Board. The appellate court affirmed. As to the claim against the union, the court noted that section 10(b)(1) of the Act makes it an unfair labor practice for a union to restrain or coerce public employees in the exercise of the rights guaranteed by the Act. Thus, breach of the duty of fair representation is an unfair labor practice that is subject to the Act's "comprehensive scheme of remedies and administrative procedures." *Foley*, 199 Ill. App. 3d at 10, 556 N.E.2d at 583.

The *Foley* court interpreted section 5 of the Act (5 ILCS 315/5 (West 1994)) as conferring exclusive jurisdiction on the Board over breach of duty of fair representation claims. It also noted that decisions of the Board are appealable directly to the appellate court and that no provision of the Act allows employees to file suit in the circuit court alleging a breach of the duty of fair representation. The court also found support for its decision in an opinion by our supreme court in *Board of Education of Community School District No. 1, Coles County v. Compton*, 123 Ill. 2d 216, 526 N.E.2d 149 (1988), finding that the Illinois Educational Labor Relations Act (IELRA) (Ill. Rev. Stat. 1987, ch. 48, par. 1701 *et seq.*) divested the circuit court of jurisdiction to vacate or enforce arbitration awards pursuant to the Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, pars. 101 through 123), despite the absence of any express language in the statute divesting the courts of jurisdiction. *Compton* noted that with concurrent jurisdiction, there is the possibility of conflicting judgments and forum shopping that may imperil the uniformity the IELRA seeks to achieve. *Compton*, 123 Ill. 2d at 222, 526 N.E.2d at 152.

The *Foley* court adopted the *Compton* policy rationale and noted that the Act and the IELRA were both enacted to provide a comprehensive regulatory scheme for public-sector bargaining in Illinois. The court also noted that the already overburdened court system would face increased amounts of unnecessary litigation should there be concurrent jurisdiction over breach of duty of fair representation claims. In distinguishing the federal labor scheme with its concurrent jurisdiction, the court noted that the primary concern of the United States Supreme Court in *Vaca* was that the general counsel of the NLRB had unreviewable discretion to refuse to institute an unfair labor practice complaint and the federal statute provided for no review of this decision. In contrast, the Act sets forth

explicit standards by which the Board must determine whether to issue an unfair labor practice complaint, and a decision by the Board's executive director not to issue a complaint is appealable to the Board and ultimately to the appellate court on administrative review. Although the Act was patterned after the LMRA, it contains provisions that distinguish it from the federal law. *Foley*, 199 Ill. App. 3d at 11-12, 556 N.E.2d at 584-85.

■ We agree with the reasoning of *Foley* and conclude that plaintiff's claims against the Unions are within the exclusive jurisdiction of the Board. Plaintiff urges that section 5 of the Act does not contain the word "exclusive" in conferring jurisdiction on the Board. However, the supreme court's *Compton* decision illustrates that use of the word "exclusive" is not dispositive of the issue. We note that *Compton* affirmed a decision of this court (*Board of Education of Community School District No. 1, Coles County v. Compton*, 157 Ill. App. 3d 439, 510 N.E.2d 508 (1987)), finding that the Illinois Educational Labor Relations Board (IELRB) had exclusive jurisdiction over claims involving arbitration awards, despite absence of the word "exclusive."

A finding of exclusive jurisdiction in the Board is consistent with the " 'comprehensive regulatory scheme for public sector collective bargaining in Illinois' " (*Foley*, 199 Ill. App. 3d at 10-11, 556 N.E.2d at 584, quoting *Chicago Board of Education v. Chicago Teachers Union*, 142 Ill. App. 3d 527, 530, 491 N.E.2d 1259, 1261 (1986)), envisioned by the General Assembly in enacting the Act and the IELRA. Concurrent jurisdiction in the circuit courts would allow inconsistent decisions and forum shopping, which would undermine the goal of uniformity sought to be achieved by the Act and IELRA. In this connection, we note that section 15.1 of the Act (5 ILCS 315/15.1 (West 1994)) directs the Board, in final decisions in representation and unfair labor practice cases, to consider final decisions of the IELRB.

Plaintiff attempts to circumvent this by asserting that she is alleging a breach of the *common law* duty of fair representation, whereas, in *Foley*, the plaintiffs were alleging a breach of the duty of fair representation under the Act. However, there simply is no common law duty of fair representation. The duty of fair representation stems from a union's statutory role as exclusive bargaining agent. *Jones v. Illinois Educational Labor Relations Board*, 272 Ill. App. 3d 612, 619, 650 N.E.2d 1092, 1097 (1995). When the legislature enacts a comprehensive statutory scheme, creating rights and duties that have no counterpart in common law, the legislature may limit or preclude the jurisdiction of the circuit courts. *Board of Education of*

*Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 165, 538 N.E.2d 524, 529 (1989).

■ Plaintiff argues that the International Union is not subject to the Act because it had no duty to represent her under the Agreement. She notes that the Agreement describes the Local Union as the exclusive bargaining agent for all employees. Section 3(i) of the Act (5 ILCS 315/3(i) (West 1994)) defines "labor organization" as:

> "[A]ny organization in which public employees participate and that exists for the purpose, in whole or in part, of dealing with a public employer concerning wages, hours, and other terms and conditions of employment, including the settlement of grievances."

Section 10(b)(1) of the Act (5 ILCS 315/10(b)(1) (West 1994)) provides that it is an unfair labor practice for a labor organization to restrain or coerce public employees in the exercise of rights guaranteed by the Act. This language applies to any labor organization, not simply to an organization certified as the exclusive bargaining representative. One of the rights granted to public employees by the Act is to be fairly represented by the exclusive bargaining agent. Plaintiff alleged in her complaint that the International Union "willfully conspired with and directed its Local Union 214D to refuse to arbitrate the grievance of the Plaintiff herein due to hos[ ]tility toward the Plaintiff." This is essentially an allegation that the International Union interfered with plaintiff's statutory right to be represented fairly by the Local Union and that this conduct caused the Local Union to breach its duty of fair representation. Such a claim clearly alleges an unfair labor practice on the part of the International Union under section 10(b)(1) of the Act. Thus, exclusive jurisdiction to hear this claim lies with the Board.

Plaintiff next argues that counts I and II of her complaint show as a matter of law that she exhausted the contractual remedies available to her under the Agreement, thus allowing her to maintain those causes of action against the City. Plaintiff points out that the parties to the Agreement are the City and the Local Union and it is the Local Union that has the sole authority to pursue arbitration. She argues that the causes of action against an employer for breach of contract and a union for breach of the duty of fair representation are intertwined. According to plaintiff, she is entitled to bring an action against her employer for breach of contract, even though it was the Local Union that, allegedly, wrongfully refused to arbitrate.

The Agreement in this case provided a three-step grievance procedure. First, the employee must submit a written grievance to her supervisor. Second, if the grievance is to be processed further, the

employee must inform her union steward, who must then put the grievance in writing and submit it to the employee's department head or other person designated by the City. Third, after the department head responds to the grievance, the Local Union may appeal that decision to the mayor. If this does not resolve the grievance, the Local Union or City may then demand arbitration.

■ Under section 8 of the Act (5 ILCS 315/8 (West 1994)), the grievance and arbitration provisions of the Agreement are subject to the Uniform Arbitration Act (710 ILCS 5/1 through 23 (West 1994)) and, once grievance procedures mandated by a collective-bargaining agreement are exhausted, suit may be brought in the circuit court by the parties to the collective-bargaining agreement for its violation. 5 ILCS 315/16 (West 1994). It is well settled that an employee subject to a collective-bargaining agreement must at least attempt to exhaust contractual remedies before resorting to a judicial remedy. To state a complaint, plaintiff must allege on the face of her pleading that grievance procedures were followed and exhausted. *Quist v. Board of Trustees of Community College District No. 525*, 258 Ill. App. 3d 814, 818, 629 N.E.2d 807, 810 (1994).

■ The trial court found that plaintiff had failed to exhaust her contractual remedies. However, we conclude that plaintiff adequately alleged in count I of her complaint that she exhausted her contractual remedies. She alleged that her grievance was processed through the third step and, when the City denied the grievance at that point, the Local Union refused to submit the grievance to arbitration. Since the Agreement allowed only the City and the Local Union to demand arbitration, plaintiff could take the grievance no further.

Nonetheless, plaintiff was not entitled to pursue her claim of breach of contract against the City in circuit court. In reviewing a trial court's judgment, a reviewing court is not limited to the reasoning employed by the trial court and may affirm the judgment on any basis warranted by the record. *Schaumburg State Bank v. Bank of Wheaton*, 197 Ill. App. 3d 713, 719, 555 N.E.2d 48, 51 (1990).

Plaintiff argues that the circuit court has jurisdiction over her contract claim. The City included this issue in its motion to dismiss before the trial court but has not argued it on appeal. Were we to agree with plaintiff that the circuit court has jurisdiction over her breach of contract claim against the City, employees could thwart the purpose of the Act to vest jurisdiction in the Board over matters involving collective-bargaining agreements. Plaintiff alleges in count I that the City wrongfully discharged her and arbitrarily applied to her certain rules and regulations promulgated pursuant to the Agreement. These allegations cannot be addressed by the circuit court

without interpreting the Agreement and viewing the City's alleged actions in light of this interpretation. These are matters that fall within the expertise of the Board.

We find support for this view in a decision of our supreme court, *Gonzalez v. Prestress Engineering Corp.*, 115 Ill. 2d 1, 503 N.E.2d 308 (1986). There, plaintiffs were terminated by their employer after filing workers' compensation claims. When plaintiffs sued, the employer raised the affirmative defense that plaintiffs had failed to exhaust the grievance procedure established by the collective-bargaining agreement. Plaintiffs moved to strike the defense and the circuit court granted the motions, but certified the question for interlocutory appeal. The appellate court denied the employer's petition for interlocutory appeal and the Supreme Court of Illinois granted leave to appeal. The supreme court held that state tort claims for retaliatory discharge are not preempted by the LMRA and plaintiffs were not required to plead exhaustion of the grievance procedure in a collective-bargaining agreement to state a cause of action for retaliatory discharge. However, the court noted it had been held by the United States Supreme Court that claims were preempted if resolution of the particular tort claim was dependent on an interpretation of the terms of the collective-bargaining agreement. Our supreme court then noted that claims for retaliatory discharge are rooted instead in the clearly mandated public policy of Illinois and exist regardless of any interpretation of a labor contract. The court also stated that exhaustion of grievance and arbitration procedures in a collective-bargaining agreement was not required prior to pursuing a tort claim for retaliatory discharge. The court based its ruling on the fact that such a claim is not derived from the labor contract and is grounded instead on a violation of important public policy. *Gonzalez*, 115 Ill. 2d at 11-12, 503 N.E.2d at 313.

Although the instant case involves a contract cause of action, rather than a tort cause of action, the principles stated in *Gonzalez* are applicable. Unlike the claim in *Gonzalez*, plaintiff's claim against the City in count I is grounded in the Agreement and would require interpretation of its terms as applied to plaintiff's particular situation.

We find further support for our holding in a decision by the United States Supreme Court, *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988), albeit in a different context. There, a union employee was discharged by her Illinois employer on the grounds that she had filed a false workers' compensation claim. The collective-bargaining agreement prohibited discharge without just cause. The union filed a grievance

on the employee's behalf. The employee also filed an action in state court against the employer, alleging retaliatory discharge. The cause was removed to federal district court and the employer moved to dismiss on the grounds that the action was preempted by section 301(a) of the LMRA (29 U.S.C. § 185 (1994)), which provides that suits for violation of collective-bargaining agreements between a union and an employer in an industry affecting commerce may be brought in any federal district court having jurisdiction of the parties. The federal district court dismissed the case and the appeals courts affirmed, finding that the state tort action was inextricably intertwined with the collective-bargaining agreement's provision prohibiting discharge without just cause and that such claims must be determined under federal law. On further appeal, the Supreme Court noted that section 301 of the LMRA "mandated resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle*, 486 U.S. at 404, 100 L. Ed. 2d at 417, 108 S. Ct. at 1880.

The Court stated that if a state law claim depends on the meaning of a collective-bargaining agreement, the application of state law is preempted and federal labor law principles must be applied. Application of state law in such cases would necessarily lead to inconsistent results, whereas federal law is uniform throughout the country. The court then held that resolution of the state law claim of retaliatory discharge was not dependent upon an interpretation of the collective-bargaining agreement, since the factual determinations to be made as to the employee's conduct and the employer's conduct and motives would not turn on any provision of that agreement. *Lingle*, 486 U.S. at 407, 100 L. Ed. 2d at 419-20, 108 S. Ct. at 1882.

This analysis may be applied to the instant case. A stated purpose of the Act is to:

> "regulate labor relations between public employers and employees, including the designation of employee representatives, negotiation of wages, hours and other conditions of.employment, and resolution of disputes arising under collective[-]bargaining agreements." 5 ILCS 315/2 (West 1994).

The legislature envisioned that decisions of the Board would be made by people with a certain level of expertise in the field of labor-management relations. Section 5(a) of the Act (5 ILCS 315/5(a) (West 1994)) requires that the Governor appoint to the Board:

> "only persons who have had a minimum of 5 years of experience directly related to labor and employment relations in representing public employers, private employers or labor organizations; or

teaching labor or employment relations; or administering executive orders or regulations applicable to labor or employment relations."

Allowing plaintiff to pursue her contract claim against the City in circuit court would undermine the Act's stated purpose and frustrate the legislature's intent to provide a uniform body of law in the field of labor-management relations to be administered by those who have the required expertise in this area. Concurrent jurisdiction may lead to forum shopping and inconsistent judgments in similar factual settings. Another consideration is the fact that circuit courts lack jurisdiction to hear claims against unions for breach of the fair duty of representation. Pleading and proving such claims is a prerequisite to maintaining an action against an employer for breach of the collective-bargaining agreement. Should we adopt plaintiff's position, circuit courts would be faced with the awkward situation of putting an action against an employer for breach of contract on hold while the Board decides whether the union breached its duty to the employee of fair representation. Undue delay in the circuit courts would certainly result.

Thus, we hold that the circuit court lacked subject-matter jurisdiction over plaintiff's claim of breach of contract in count I of her complaint and exclusive jurisdiction lies with the Board.

■ ■ We now turn to count II of the complaint. Plaintiff argues that she was not required to exhaust her contractual remedies prior to filing a tort cause of action against the City. We have already held that plaintiff did in fact exhaust her contractual remedies. However, this fact does not mean that the trial court erred in dismissing count II. As noted above, a reviewing court is not limited to the reasoning employed by the trial court and may affirm the judgment on any basis warranted by the record. *Schaumburg State Bank*, 197 Ill. App. 3d at 719, 555 N.E.2d at 51. Plaintiff has attempted to allege a cause of action for constructive fraud against the City.

> "Constructive fraud is any act, statement, or omission which amounts to positive fraud, or which is construed as fraud because of its detrimental effect upon public interests and public or private confidences. It requires neither actual dishonesty, nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others. It can be inferred from the circumstances regardless of any actual dishonesty of purpose." *People ex rel. Hawthorne v. Bartlow*, 111 Ill. App. 3d 513, 518, 444 N.E.2d 282, 285 (1983).

To state a claim for constructive fraud, a plaintiff must allege

facts establishing the breach of a duty arising from a fiduciary or confidential relationship whereby the fiduciary has profited. Where such a claim is alleged, the fiduciary is presumed to have acted fraudulently and must prove by clear and convincing evidence that the transaction was fair and equitable and did not result from undue influence. *Farmer City State Bank v. Guingrich*, 139 Ill. App. 3d 416, 425, 487 N.E.2d 758, 764 (1985). Plaintiff has not alleged facts establishing any of the requisites of a cause of action for constructive fraud. Thus, count II of her complaint was properly dismissed on this basis. However, in fairness to plaintiff, count II should be remanded to the trial court to allow plaintiff an opportunity to amend count II and state a claim for constructive fraud.

Accordingly, the circuit court's judgment is affirmed as to counts I, III and IV of the complaint. The judgment as to count II is reversed and the cause remanded to allow plaintiff an opportunity to amend count II to state a cause of action for constructive fraud.

Affirmed in part, reversed in part and remanded with directions.

KNECHT and GREEN, JJ., concur.