2022 IL App (1st) 210890-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
August 9, 2022

No. 1-21-0890

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| MICHAEL SIMS and JOHN GARCIA, on behalf of themselves and all others similarly situated, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellants, | ) ) | Cook County |
| v. | ) ) | No. 20 CH 6309 |
| | ) | |
| THOMAS J. DART, Sheriff of Cook County, Illinois, and the COUNTY OF COOK, ILLINOIS, as indemnitor, | ) ) ) | The Honorable Eve M. Reilly, Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Trial court's dismissal of complaint by public employees covered by collective bargaining agreement alleging underpayment of wages by public employer, on grounds that claims were preempted by Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2020)) and that plaintiffs failed to exhaust administrative remedies, is affirmed.

¶ 2    Plaintiffs Michael Sims and John Garcia appeal the dismissal of their complaint purporting to assert a class action for underpayment of wages in violation of the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 *et seq.* (West 2020)) by defendants Thomas J. Dart, in his official capacity as Sheriff of Cook County (Sheriff), and the County of Cook, as indemnitor.

The trial court's bases for dismissing the plaintiffs' complaint were that the claims asserted were preempted by the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2020)) and that the plaintiffs had failed to exhaust their administrative remedies. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                                    I. BACKGROUND

¶ 4        The plaintiffs are employed by the defendants as deputy sheriffs in the Cook County Sheriff's Office (Sheriff's Office). As such, they are covered by a collective bargaining agreement (CBA) between the defendants and the Illinois Fraternal Order of Police Labor Council (FOP Labor Council). Several provisions of that CBA are pertinent to this appeal. One such provision is section 2.1(G), which gives the defendants "the rights take any and all actions as may be necessary to carry out the duties and responsibilities of the employer in situations of civil emergency as may be declared by the employer. It is the sole discretion of the employer to determine that civil emergency conditions exist *** which call for immediate action whereas it may be required to assign employees as the Employer deems necessary to carry out its duties and responsibilities."

¶ 5        A second pertinent provision is section 5.1, which provides in pertinent part that "Deputy Sheriffs who are assigned as Civil Process Servers, and those in Child Support Warrants, Child Support Civil Process, Warrants, Levies, Evictions, S.W.A.P. Units and Canine Unit, will receive salaries in accordance with Payroll Grade D2B." An appendix to the CBA specifies the hourly, bi-weekly, and annual rates of pay for payroll grades D2 and D2B. In general, the pay rates for payroll grade D2B are higher than the rates for payroll grade D2 by about $2.00 per hour.

¶ 6        Finally, article XI of the CBA sets forth a four-step grievance process to "specify the method by which employees may present grievances and seek redress." The grievance policy "shall apply to all bargaining unit employees under the jurisdiction" of the defendants. A grievance is defined

as "a difference between an employee or the union and the employer with respect to the interpretation or application of, or compliance with the terms of this Agreement between the Employer and the Union." A grievance may be presented by either the aggrieved employee or by a union representative. The four-step process culminates in a hearing before an impartial arbitrator, and "the decision of the Arbitrator shall be binding."

¶ 7    The instant dispute concerning wages arises out of a staffing shortage among correctional officers that occurred within the Sheriff's Office in 2020, due to the spread of COVID-19 within the Cook County Jail and the efforts undertaken by the Sheriff's Office to mitigate it. To address these staffing shortages, the Sheriff temporarily reassigned certain deputy sheriffs to work in the jail despite the fact that they did not hold assignments to work there. The parties agree that the Sheriff did this pursuant to its emergency authority under section 2.1(G) of the CBA, and there is no dispute that a civil emergency did exist under that section.

¶ 8    On October 15, 2020, the plaintiffs filed the instant complaint, seeking to assert a class action on behalf of themselves and other similarly-situated deputy sheriffs who had been reassigned to duties within the Cook County Department of Corrections (Department of Corrections). The complaint alleged that, prior to approximately March 2020, the plaintiffs' assignment had been to work "street units" performing duties such as service of civil process and warrant execution. In working such positions, they received wages and salaries in accordance with payroll grade D2B and "had been earning such pay for multiple pay periods" as of that time. The complaint went on to allege that, in or about March 2020, the Sheriff "unilaterally suspended" the CBA applicable to deputy sheriffs such as the plaintiffs "under an emergency clause provision therein." The Sheriff then temporarily reassigned the plaintiffs to work within the Department of Corrections and began paying them at the lower rate of pay earned by correctional officers instead of paying them

according to the D2B payroll grade scale.

¶ 9        The complaint alleged that, despite the suspension of the CBA, each plaintiff had an implicit employment agreement with the defendants that they would continue to be paid according to the D2B payroll grade scale, at which each of them had been paid for multiple pay periods. It alleged that, prior to their temporary reassignment, the plaintiffs had been paid "according to a demonstrable formula" (*i.e.*, the D2B payroll grade scale), and the plaintiffs and defendants had "mutually assented" to the plaintiffs' receipt of such rate of pay "by virtue of the fact that each was so paid for multiple pay periods" preceding their temporary reassignment. Finally, it alleged that the defendants' payment of the plaintiffs at the correctional officers' pay rate instead of the D2B rate established in their implicit employment agreement violated the Wage Act (820 ILCS 115/1 *et seq.* (West 2020)). It sought class certification, damages in the amount that each plaintiff was owed at the D2B rate for each hour of underpaid work since the reassignment, 2% of the amount of such underpayment for each month it occurred, and reasonable attorney fees.

¶ 10       The defendants filed a motion to dismiss the plaintiffs' complaint on multiple grounds. Pertinent to this appeal, they first argued that the plaintiffs' claims involved matters of collective bargaining and thus were preempted by the Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2020)), under which the proper venue for adjudication was the Illinois Labor Relations Board (ILRB). They asserted that preemption occurs whenever a trial court is required to interpret a CBA in order to resolve a claim, and the trial court would be required to do so here in order to resolve the plaintiffs' claims. The defendants further contended that the trial court lacked jurisdiction over the plaintiffs' claims because the plaintiffs had not yet exhausted their administrative remedies through the grievance procedure set forth in the CBA.

¶ 11       The plaintiffs filed a response to the motion to dismiss. Generally speaking, they argued that

their claims were not preempted because they did not arise from the provisions of the CBA and therefore the trial court would not be required to interpret the CBA to resolve them. They pointed out that their complaint pled that the CBA had been suspended during the time of their reassignment and that the CBA was referenced only to the extent that it provided a formula for calculating damages under the D2B payroll grade scale. They also argued that they were not required to exhaust administrative remedies because the suspension of the CBA meant that "there were no administrative remedies to abide by pursuant to the CBA" and that the claims arose pursuant to statute and not under the CBA itself.

¶ 12    The trial court conducted oral argument on the defendants' motion to dismiss, at which time it questioned the plaintiffs' counsel about the plaintiffs' basis for asserting that the CBA had been suspended in its entirety. The exchange occurred as follows:

"THE COURT: Why are you saying that the CBA is suspended though? Where are you getting that from?

MR. WILKERSON [(Plaintiffs' Attorney)]: Under the emergency provision, that they are allowed to quote, unquote, relax standards. However, that would never happen if the CBA was still being held —

THE COURT: But your interpretation of relaxed standards is that the CBA was suspended.

MR. WILKERSON: Yes.

THE COURT: Okay.

MR. WILKERSON: And it can also be —

THE COURT: And it could also be that it took the case law provision of the CBA to get there.

MR. WILKERSON: Well, *** once they enacted that provision, albeit temporary, *** it was suspended during those circumstances.

* * *

THE COURT: *** [T]he fact that they are relaxing *** the CBA under *** that emergency provision, how does that get you to the point where the entire CBA is suspended? I guess —

MR. WILKERSON: Your Honor, they wouldn't have even been able *** to transfer sheriff deputies, who have no training as correctional officers, and then get them to work for a lower wage and work as a correctional officer without various steps in the CBA. So they automatically skipped procedures just to do that. That is just one example of essentially using the emergency standards to essentially handle Covid as best anyone could, *** but that's never been done before here, your Honor.

And just by *** their actions *** of moving officers with zero training in a correctional facility due to an emergency and skipping their own procedures speaks to that.

THE COURT: Okay."

¶ 13     At the conclusion of the hearing, the trial court granted the defendants' motion to dismiss. The court reasoned that it would be required to interpret the emergency provision of the CBA to make any determination about whether its language meant that the CBA had in fact been suspended in its entirety. Because it would need to analyze the CBA, the trial court concluded that the claim was preempted and that the circuit court lacked jurisdiction. It further stated that it agreed with the defendants that the plaintiffs were required to exhaust administrative remedies under the CBA and had failed to do so. The plaintiffs thereafter filed a timely notice of appeal.

¶ 14                                    II. ANALYSIS

¶ 15    This appeal involves the dismissal of a complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)). Dismissal is proper under that section where the trial court lacks subject matter jurisdiction over the action (*id.* § 2-619(a)(1)) or where the claim asserted is barred by other affirmative matter that defeats the claim (*id.* § 2-619(a)(9)). In reviewing a dismissal under section 2-619, this court accepts as true all well-pleaded facts in the complaint and the reasonable inferences that arise therefrom. *McHenry Township v. County of McHenry*, 2022 IL 127258, ¶ 57. However, we disregard any legal and factual conclusions in the complaint that are not supported by specific allegations. *Id.* We undertake *de novo* review of the trial court's judgment and evaluate whether dismissal was proper as a matter of law. *Id.*

¶ 16                    A. Preemption of claim by Public Labor Relations Act

¶ 17    The plaintiffs first argue that the trial court erred in concluding that the Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2020)) preempted their claim by vesting jurisdiction with the ILRB instead of the circuit court. Their contention is that the trial court incorrectly viewed their claim as arising solely under the CBA. In actuality, they argue, their right to payment on the D2B scale "arose from an independent agreement" that can be enforced under the Wage Act without requiring any interpretation of the CBA. In other words, their claim is simply "that there was an agreed upon rate of pay and that the Sheriff failed to pay it." They assert that, to the extent their claim requires any reference to the CBA, it would only involve looking at the D2B payroll grade scale in order to calculate damages, and such tangential reference to a CBA does not trigger preemption. At most, it involves a "minimal level" of interpretation of the CBA, and this "does not automatically trigger preemption." Finally, they argue that the court must accept as true their allegation that the CBA was suspended, and from this premise they assert that "interpretation of the CBA is not required to evaluate the merits of the Plaintiffs' allegations since they do not arise

from the CBA's provisions."

¶ 18    The general rule is that circuit courts are vested by the Illinois Constitution with original jurisdiction over all justiciable matters, except in circumstances (not present in this case) where the supreme court has exclusive and original jurisdiction. Ill. Const. 1970, art. VI, § 9. However, where the legislature enacts a comprehensive statutory scheme creating rights and duties that have no counterpart in common law or equity, the legislature may vest original jurisdiction in an administrative agency (*J & J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 23) and thereby limit or preclude the jurisdiction of the circuit courts. *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504, IFT/AFL-CIO*, 128 Ill. 2d 155, 165 (1989).

¶ 19    The Public Labor Relations Act is part of a " 'comprehensive regulatory scheme for public sector bargaining in Illinois.' " See *Board of Education of Community School District No. 1, Coles County v. Compton*, 123 Ill. 2d 216, 221 (1988) (quoting *Chicago Board of Education v. Chicago Teachers Union*, 142 Ill. App. 3d 527, 530 (1986)). Section 2 of the Public Labor Relations Act provides in part, "It is the purpose of this Act to regulate labor relations between public employers and employees, including the designation of employee representatives, negotiation of wages, hours and other conditions of employment, and resolution of disputes arising under collective bargaining agreements." 5 ILCS 315/2 (West 2020). Section 5(a) creates the Illinois Labor Relations Board and provides that it is comprised of two panels, the State Panel and the Local Panel. *Id.* § 5(a). Relevant here, section 5(b) provides that "[t]he Local Panel shall have jurisdiction over collective bargaining agreement matters between employee organizations and units of local government with a population in excess of 2 million persons, but excluding the Regional Transportation Authority." *Id.* § 5(b). Section 15(a) provides that the provisions of the Public Labor Relations Act or any

collective bargaining agreement negotiated under it shall prevail and control in the case of any conflict between the provisions of the statute and any other law, executive order or administrative regulation "relating to wages, hours and conditions of employment and employment relations. *Id.* § 15(a). Section 15(b) likewise provides that any collective bargaining agreement executed pursuant to the Public Labor Relations Act shall supersede any contrary statutes, charters, ordinances, rules or regulations "relating to wages, hours and conditions of employment and employment relations adopted by the public employer or its agents." *Id.* § 15(b). The ILRB has jurisdiction to resolve unfair labor practice complaints against public employers and labor organizations. *Id.* §§ 10, 11.

¶ 20    The appellate court has held that the Public Labor Relations Act vests the ILRB with jurisdiction over claims by public employees against public employers involving "disputes arising from CBAs." *Gantz v. McHenry County Sheriff's Department Merit Comm'n*, 296 Ill. App. 3d 335, 340 (1998); accord *McGreal v. Village of Orland Park*, No. 12 C 5135, 2013 WL 3984477, *11 (N.D. Ill. Aug. 2, 2013) (Public Labor Relations Act "has been interpreted to confer exclusive jurisdiction on the [ILRB] over matters involving collective bargaining agreements between public employers and employees, including breach of contract claims"). Similarly, claims by public employees against their public employers that necessitate the "interpretation" of the terms of a CBA have been held to come within the exclusive jurisdiction of the ILRB. *Cessna v. City of Danville*, 296 Ill. App. 3d 156, 166 (1998). Among the reasons for this is that allowing an employee to pursue a breach of contract claim against a public employer in circuit court would undermine the legislative intent of the Public Labor Relations Act "to provide a uniform body of law in the field of labor-management relations to be administered by those who have the required expertise in this area." *Id.* at 168. Also, allowing concurrent jurisdiction between the ILRB and the circuit

court "may lead to forum shopping and inconsistent judgments in similar factual settings." *Id.* Finally, because circuit courts lack jurisdiction to hear claims against labor unions for breach of the duty of fair representation, the proving of which is a prerequisite to maintaining an action against a public employer for breach of a CBA, circuit courts would be faced with undue delay in waiting for decisions by the ILRB on claims for breach of the duty of fair representation before claims against employers could be resolved. *Id.*

¶ 21        In this case, the plaintiffs' argument does not take issue with the principles set forth above. Rather, as stated previously, the plaintiffs' argument is that their claim involves an implicit agreement that exists independently of the CBA. Because of this, they argue, their claim neither arises out of the CBA nor requires any interpretation of its terms. According to the plaintiffs, reference to the CBA is only necessary to ascertain their damages because that is the document that sets forth the D2B payroll grade scale, and such tangential reference to the CBA does not require preemption. Thus, they argue, their claim for underpayment of wages pursuant to this implicit, independent agreement can be enforced through the Wage Act.

¶ 22        We reject the plaintiffs' argument that their claim neither arises out of the CBA nor requires interpretation of it and that therefore it is not preempted. First, if the CBA remained in effect and was not suspended in its entirety when the Sheriff invoked section 2.1(G) and reassigned the plaintiffs from working street units to duties within the Department of Corrections, then whatever right that the plaintiffs had to receive wages or salaries under the D2B payroll grade scale arose out of the CBA. In that circumstance, any claim by the plaintiffs that they are entitled to be paid on the D2B payroll scale notwithstanding their reassignment would present a dispute arising out of the terms of CBA, resulting in preemption. See *Gantz*, 296 Ill. App. 3d at 340. Alternatively, if we credit the plaintiffs' allegation that the CBA was in fact suspended or otherwise lost its legal

effect when the Sheriff invoked section 2.1(G) and reassigned the plaintiffs, ultimately no legal determination could be made on this point without the court interpreting the applicable provisions of the CBA. The trial court recognized in its ruling that this would be the case, and we agree with the trial court on this matter. One way or another, the claim raised by the plaintiffs cannot be resolved without undertaking some substantive interpretation of the terms of the applicable CBA, and for this reason the plaintiffs' claim is preempted. See *Cessna*, 296 Ill. App. 3d at 166. Jurisdiction over this kind of claim is vested in the ILRB, not in the circuit court. *Id.*

¶ 23    We reject the plaintiffs' attempts to overcome preemption by alleging that an "implied" agreement existed based on past payment of D2B wages that is entirely "independent" of the CBA. It would thwart the policies of the Public Labor Relations Act to allow preemption to be overcome through this kind of allegation. This court has previously rejected this kind of argument in a case involving preemption under section 301 of the Labor Management Relations Act (LMRA) (29 U.S.C. § 185 (2018)), which applies outside the context of state public employment and similarly preempts state-law claims that require the interpretation of a CBA. *Glasper v. Scrub, Inc.*, 2021 IL App (1st) 200764, ¶ 39. In *Glasper*, the court recognized that an implied contract can exist "in the absence of an express agreement." *Id.* However, it reasoned that where the plaintiff has the benefit of an express agreement in the form of a CBA that had been negotiated on her behalf, no implied agreement could exist between the plaintiff and her employer. *Id.* The same result is warranted here. It is a general principle of contract law that an implied contract cannot coexist with an express contract on the same subject. *Maness v. Santa Fe Park Enterprises, Inc.*, 298 Ill. App. 3d 1014, 1022 (1998). Again, for a court even to resolve the issue of whether an implied agreement existed that was independent of the CBA and controlled over the express terms of the CBA addressing the same subject matter, the court would have to interpret the terms of the CBA.

¶ 24      We have reviewed the various cases cited by the plaintiffs, and we find that none of them aid the plaintiffs' argument. Significantly, none of the cases cited by the plaintiffs involves preemption of circuit court jurisdiction in favor of the ILRB under the Public Labor Relations Act.[1] Instead, most of the cases cited by the plaintiffs involve federal preemption of state law under section 301 of the LMRA (29 U.S.C. § 185 (2018)),[2] with a few involving the grievance requirements of CBAs.

¶ 25      In one such case, *Dollear v. G.F. Connelly Mechanical Contractors, Inc.*, 355 F. Supp. 2d 937, 939 (N.D. Ill. 2005), a plaintiff's state law claims were not preempted where they were predicated on an express written contract that the plaintiff had with his former employer to receive incentive bonuses. The court found that this was independent of the CBA and "does not depend on the CBA in any respect." *Id.* Here, the plaintiffs have no express written contract that is clearly separate from their CBA. Rather, as stated, their claim either arises out of the CBA or requires substantive interpretation of its provisions to resolve their arguments that it does not apply.

---

[1] In *Barlett v. City of Chicago*, No. 14 C 7225, 2015 WL 135286, *4 (N.D. Ill. Jan. 9, 2015), the district court noted that the defendant had made this argument, but it was not addressed by the district court.

[2] The analysis of whether a state law claim is preempted by federal labor law under section 301 of the LMRA (29 U.S.C. § 185 (2018)) is similar to the issue in this case, in that it turns on whether a CBA must be interpreted to resolve the claim. *Barlett* explains that section 301 requires employees to exhaust the grievances and arbitration remedies provided for in a CBA prior to filing suit. *Barlett*, 2015 WL 135286, *3. Suits for violation of CBAs may then be pursued in the appropriate federal district court. *Id.* In any case where " 'the resolution of a state law claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute.' " *Id.* at *4 (quoting *Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495, 499 (7th Cir. 1996), citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988)). " 'To determine whether a state-law claim is pre-empted, we must look at the legal character of the claim: a question of state law, entirely independent of any understanding embodied in the collective bargaining agreement, may go forward as a state-law claim, whereas a claim, the resolution of which is sufficiently dependent on an interpretation of the [collective bargaining agreement], will be preempted.' " *Id.* (quoting *Baker v. Kingsley*, 387 F.3d 649, 657 (7th Cir. 2004)). However, "preemption will not occur if a dispute merely references or requires consultation of a collective bargaining agreement." *Id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)).

¶ 26    In two other cases cited by the plaintiffs, *Byrne v. Hayes Beer Distributing Co.*, 2018 IL App (1st) 172612, and *Daniels v. Board of Education of the City of Chicago*, 277 Ill. App. 3d 968 (1996), the plaintiffs were allowed to pursue claims in circuit court to assert substantive statutory rights granted under the Wage Act. In *Byrne*, the claim was that an employer's practice of deducting delivery drivers' commissions for products that lingered too long on store shelves violated the requirement of section 9 of the Wage Act (820 ILCS 115/9 (West 2016)) that an employee must expressly agree in writing to wage deductions at the time the deductions are made. *Byrne*, 2018 IL App (1st) 172612, ¶ 1. The court held that this was a right conferred by statute; it was not one dependent on or requiring interpretation of the parties' CBA, which was silent on the issue. *Id.* ¶ 32. Similarly, in *Daniels*, the claim was that the refusal to pay terminated employees for accrued but unused vacation days violated section 5 of the Wage Act (820 ILCS 115/5 (West 1996)), which requires an employer to pay the monetary equivalent of all earned vacation time as final compensation if an employment contract provides for paid vacation and the employee is termination without having taken all of it. *Daniels*, 277 Ill. App. 3d at 969. The court held that this right to be paid for unused vacation days arose under the statute, that it was not addressed in the CBA, and that no interpretation of the CBA was required to resolve the claim. *Id.* at 973.

¶ 27    Here, by contrast, the plaintiffs are not seeking to enforce one of the substantive statutory rights granted by the Wage Act, such as the right in section 5 to receive pay for unused vacation days or the right in section 9 to avoid having wages deducted without giving express written consent at the time of deduction. See 820 ILCS 115/5, 9 (West 2020). Instead, the right that the plaintiffs are seeking to enforce here is to be paid according to the D2B payroll grade scale notwithstanding their reassignment. Their alleged right to receive this particular amount of wages is not statutory but is a matter of contract or agreement, whether that is the CBA or an implicit

agreement based on past practice. The Wage Act does not provide employees with the substantive right to a particular amount of wages. *Smith v. C.H. James Restaurant Holdings*, No. 11 C 5545, 2012 WL 255806, *1 (N.D. Ill. Jan. 26, 2012) (collecting cases). Instead, it provides employees with a cause of action against their employers for timely and complete payment of wages. *O'Malley v. Udo*, 2022 IL App (1st) 200007, ¶ 46; 820 ILCS 115/14(a) (West 2020). It defines "wages" in pertinent part as "any compensation owed an employee by an employer *pursuant to an employment contract or agreement* between the 2 parties." (Emphasis added.) 820 ILCS 115/2 (West 2020). Accordingly, in a case such as this, the Wage Act provides a means to enforce the terms of an existing contract or agreement, but it provides no substantive right to payment beyond what that contract or agreement requires. *Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021). For this reason, the plaintiffs' claim here is one that involves interpretation of the relevant CBA in a way that was not necessary for the claims at issue in *Byrne* and *Daniels*.

¶ 28    Finally, we simply find that the plaintiffs' claim in this case requires a level of interpretation of the CBA that the district court found not to be necessary in *Barlett v. City of Chicago*, No. 14 C 7225, 2015 WL 135286 (N.D. Ill. Jan 9, 2015), the last case relied upon by the plaintiffs. There, the plaintiff was a SWAT team member of the Chicago Police Department who brought a claim alleging that the defendant had violated the Wage Act by failing to compensate him for the time he spent loading and unloading SWAT gear and weapons into and out of his personal vehicle and for using his personal vehicle to respond to assignments, notwithstanding its imposition of procedures requiring him to do these things. *Id.* at *1. The district court rejected the defendant's argument in its motion to dismiss that the claim was preempted under section 301 of the LMRA because interpretation of the CBA was required to resolve these claims. *Id.* at *4-5. It found that the plaintiff was not asking the court to "make a determination as to the wages owed to him under

the CBA," nor was the plaintiff alleging the defendant "violated the CBA." *Id.* at \*5. The district court reiterated multiple times in its decision that, as presented, the plaintiff's Wage Act claim did not require interpretation of the terms of the CBA, and it stated that preemption may be warranted if the claim later turned out to require interpretation of the CBA. *Id.*

¶ 29    As a federal district court decision, *Barlett* is not binding on this court. *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 74. Regardless of that, however, we find that the claim presented by the plaintiffs in this case requires significant interpretation of the CBA in a way that was apparently not the case in *Barlett*. As we discussed above, for a court to even reach the plaintiffs' assertion that their right to wages on the D2B scale despite reassignment is not owed "under the CBA" but rather is owed according to an "implicit" and "separately agreed upon wage rate," a court must undertake a substantive interpretation of the provisions of the CBA. No contention similar to this was raised in *Barlett*, and the district court made clear that preemption might be necessary in that case if the plaintiff later took a position that required interpretation of the CBA. The plaintiffs have taken such a position in this case.

¶ 30                          B. Exhaustion of administrative remedies

¶ 31    As an additional basis for dismissal of the plaintiffs' cause of action, the trial court found that it lacked jurisdiction because the plaintiffs had failed to exhaust their administrative remedies under the grievance provisions of the CBA. On appeal, the plaintiffs argue that this finding by the trial court was erroneous. They argue that the grievance requirements of the CBA do not apply to their claim because the Sheriff suspended the CBA prior to the time their claim arose. Thus, they argue that their claim arises under the Wage Act and not under the CBA. The plaintiffs acknowledge that this issue of exhaustion of remedies is "directly tied" to the issue of preemption.

¶ 32    Article XI of the applicable CBA sets forth a four-step grievance process, which "shall apply

to all bargaining unit employees under the jurisdiction" of the defendants. This includes the plaintiffs. It defines a grievance as "a difference between an employee or the union and the employer *with respect to the interpretation or application of*, or compliance with *the terms of this Agreement* between the Employer and the Union." (Emphases added.) It allows a grievance to be presented by either the aggrieved employee or by a union representative. It provides that the four-step process culminates in a hearing before an impartial arbitrator and that "the decision of the Arbitrator shall be binding."

¶ 33    It is required by section 8 of the Public Labor Relations Act that CBAs "shall contain a grievance resolution procedure which shall apply to all employees in the bargaining unit and shall provide for final and binding arbitration of *disputes concerning the administration or interpretation of the agreement* unless mutually agreed otherwise." (Emphasis added.) 5 ILCS 315/8 (West 2020). "When a CBA provides for a grievance procedure and arbitration as a means for settling disputes, those procedures are the exclusive method to redress violations of that agreement." *Amalgamated Transit Union, Local 308 v. Chicago Transit Authority*, 2012 IL App (1st) 112517, ¶ 17. If contractual remedies under the CBA are not exhausted prior to bringing a claim in state circuit court, the circuit court must dismiss the claim. *Id.* However, not all disputes between an employee and an employer are subject to the grievance and arbitration procedures of a CBA. *Daniels*, 277 Ill. App. 3d at 972. To determine whether an employee's exclusive remedy is to follow the grievance and arbitration procedure outlined in a CBA, a court considers whether the claim is one which on its face is governed by the contract. *Id.*

¶ 34    For largely the same reasons discussed above, we find that the claim presented by the plaintiffs here is subject to the grievance and arbitration requirements of the CBA. On its face, the plaintiffs' claim that they are entitled to be paid according to the D2B payroll grade scale presents

a matter governed by the parties' CBA. Any dispute about whether the plaintiffs are entitled to continue to receive pay on the D2B scale notwithstanding their reassignment from street units to duties within the Department of Corrections presents a question requiring interpretation of the CBA. Further, we find that the plaintiffs' argument that the CBA does not apply because it had been "suspended" by the Sheriff necessarily presents an issue pertaining to "the interpretation or application of" the terms of the CBA. These are questions clearly vested by the CBA and the statute in the grievance and arbitration process. As there is no dispute that the plaintiffs did not exhaust their administrative remedies prior to filing an action in circuit court, the trial court's dismissal of the plaintiffs' cause of action for this reason was proper.

¶ 35                                    III. CONCLUSION

¶ 36        For the reasons set forth above, the judgment of the trial court is affirmed.

¶ 37        Affirmed.